Case 3:12-cv-01681-MO

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

Denise Subramaniam, pro se

Plaintiff,

    v.

D. Andrew Beal et al

Defendants

Civil Case No. 3:12 – CV – 1681 MO

Plaintiff's Opposition to Northwest
Trustee's Motion to Dismiss

1          **RESPONSE TO LR 7-1 CERTIFICATE OF COMLIANCE**

2          Attorney for Northwest Trustee Services did not make a good faith effort to resolve

3 the motion via telephone or email. Good faith effort involves a reasonable give and take

4 between parties and a review of pertinent materials and facts; no such give and take occurred.

5               **OPPOSITION TO MOTION**

6          Contrary to NWTS's claims in their motion to dismiss, Plaintiff's claims against

7 NWTS are not moot; and she does state a claim for relief against NWTS. Regardless of the

8 fact that a trustee's sale did not complete Plaintiff's claims against NWTS stand because

9 NWTS has an obligation under the Federal Fair Debt Collection Practices Act, 15 USC §

10 1692 et seq. (FDCPA) which they failed to perform.

11          NWTS adheres to the letter of the law, but not to the substance of the law. The

12 FDCPA exists to protect consumers, but without enforcement it is meaningless and fails to

13 provide the protection Congress intended when the legislation was passed.

14          A trustee sale is an exceptionally drastic means for collection of a debt. It has the

15 potential to make a family homeless and cause tremendous harm. When this method of

1    collecting a debt is done without reasonable investigation into whether a debt is valid or

2    whether fraud has been committed entire communities are harmed, not just the homeowners.

3            Furthermore, Plaintiff claims in her amended complaint that NWTS participates in a

4    conspiracy to defraud; this claim is not moot. Plaintiff provides a response to NWTS's

5    arguments and memorandum of law herein:

6            **RESPONSE and OPPOSITION TO NWTS's ARGUMENTS and**
7                            **MEMORANDOM OF LAW**

8    *A.  The Amended Complaint Fails to Comply with FRCP 8*

9            Plaintiff made a tremendous effort to improve her amended complaint and it is much

10   better than her original complaint; albeit still not perfect. Plaintiff recognized this, but the

11   filing deadline had to be met so she was unable to make additional changes. She was fearful

12   of angering the court by asking for additional time although she had been ill while writing it.

13           If Plaintiff's complaint still fails to comply with Fed. R. Civ. P. 11(b) (dkt. # 12) then

14   the remedy is a second amended complaint; not dismissal of her complaint entirely as

15   NWTS's motions pleads. Generally it is an abuse of discretion to sustain a dismissal or

16   demurrer without leave to amend if there is any reasonable possibility that the defect can be

17   cured by amendment. (*Temescal Water Co. v. Department of Public Works (1955) 44 Cal.2d*

18   *90, 107 [280 P.2d 1].).* Plaintiff's claims have merit and there is reasonable possibility that

19   the defect can be cured by amendment.

20           Therefore NWTS's argument for dismissal, particularly with prejudice, because

21   Plaintiff's amended complaint fails to comply with FRCP 8 should be denied. ➤

1    NWTS argues that Plaintiff's complaint should be dismissed because it "is not a short

2    and plain statement of the claim showing pleader is entitled to relief."

3            To prevent premature dismissal of meritorious cases the Court granted leniency, or

4    "liberal construction," to pro se pleadings against the backdrop of *Conley v. Gibson, 355 U.S.*

5    *41 (1957)*. In Conley the court ruled that general allegations of discrimination were sufficient

6    to fulfill the Rule 8 requirement of a "short plain statement" because liberal discovery

7    guidelines allowed the complaint to gain much more specificity before trial.

8            There is nothing simple about the Plaintiff's mortgage fraud claims. The very

9    mechanisms of the fraud conspiracy that victimized her intentionally manufactured this

10   complexity. Furthermore, she claims in her amended complaint that the victims of this fraud

11   conspiracy were discriminatorily selected specifically because they were less likely to have

12   the financial recourses to defend their rights in court.

13           Some of the new plausibility standards with which courts might determine the

14   adequacy of complaints disproportionately harms pro se litigants.

15           First, the Supreme Court's instruction that "conclusory" facts not be presumed true

16   when determining a claim's plausibility will affect those who (1) lack the resources to

17   develop facts before discovery, (2) bring claims requiring them to plead information

18   exclusively within the opposition's possession, or (3) rely on forms in drafting complaints.

19   Pro se litigants typify the parties who demonstrate all three behaviors.

20           Second, determining whether the remaining allegations permit a plausible inference

21   of wrongdoing, as per the Supreme Court's instruction, is a wildly subjective endeavor.

22   Courts are likely—no doubt unintentionally—to draw inferences that disfavor pro se litigants

23   because their "judicial common sense" judgments of what is plausible result from a

1    drastically different set of background experiences and values. The admixture of these two

2    steps portends serious trouble for pro se litigants, who, even before the plausibility standard,

3    did not fare well despite the leeway afforded their complaints.

4          The broader interpretation of "liberal construction," under Conley should be applied

5    here because Plaintiff's complaint has merit and her claims can be substantiated with

6    material evidence; if she can ever get her day in court.

7          It would be a grave miscarriage of justice to dismiss Plaintiff's first amended

8    complaint because she in unable to comply with FRCP 8 or other procedural rules simply

9    because she is not an attorney and cannot understand the idiosyncrasies of FRCP 8 the way

10   an attorney does after the advantage of many years of study.

11         Any such dismissal with prejudice would unequivocally be a violation of the

12   Plaintiff's Constitutional right to due process. The federal courts are entrusted with

13   upholding our Constitution and any plausibility standards that disproportionately harm pro se

14   litigants would also violate those litigants' Constitutional right to due process.

15         Therefore, NWTS's argument for dismissal because Plaintiff's amended complaint

16   fails to comply with FRCP 8 should be denied. ➢


17   B.  *__The Court Lacks Subject Matter Jurisdiction Because No Trustee's Sale Was Held or__*

18       *__Completed__*

19         NWTS argues that the standing, ripeness, and mootness doctrines under Article III

20   jurisprudence dictate a dismissal of Plaintiff's claim because a controversy between parities

21   no longer exists; and therefore her claims are moot and the court doesn't have jurisdiction.

1        NWTS errors in its logic and has misconstrued Plaintiff's claims made against NWTS

2      in her amended complaint. A controversy between the parties does still exist regardless of

3      whether the sale completed. None of the cases NWTS cites in their memorandum of law

4      support their flawed position because Plaintiff's case is not similar to any of them.

5        Plaintiff was unable to find all NWTS's cited cases online; another disadvantage of

6      being a pro-se litigant; she is sure attorneys must have some resources they use to find cases

7      to cite; but she has no idea what that is, or if she'd be able to access it even if she did. This

8      places her at a terrible disadvantage against NWTS because she is limited in what cases she

9      will be able to find to support her opposing arguments. Cases NWTS cited, like Delaney v.

10     OneWest Bank, Fisher v. MERS and others specific to foreclosures, are unlike Plaintiff's

11     because: she never "fell behind" in her mortgage payments; no judicial foreclosure was ever

12     sought; nor did any of the plaintiffs claim a violation of the FDCPA specific to NWTS as a

13     debt collector or for damages as a result of that violation; nor did any of those plaintiffs claim

14     the trustee was a co-conspirator in a conspiracy to defraud.

15       Plaintiff began her amended complaint with a quote from the "Notice" NWTS posted

16     on Plaintiff's home on May 20, 2012. NWTS included this quote because the Federal Trade

17     Commission requires them, as a debt collector, to inform consumers about their rights under

18     the FDCPA. In part this quote states: *"If you notify us within 30 days after receipt of this*

19     *notice that you dispute the debt or any part of it, we shall obtain verification of the debt and*

20     *mail it to you."*

21       Plaintiff notified NWTS in writing within 14 days that she disputed the alleged debt

22     in its entirety. NWTS did not investigate the validity of the debt or provide a written response

23     with such validation as required by the FDCPA. Plaintiff is entitled to actual and statuary

1    damages as a result. *Nelson v. Select Financial Serv., Inc., 2006 U.S.Dist. LEXIS 42637*

2    *(E.D.Pa. 2006)*

3          NWTS was intent to proceed to sale even AFTER they were notified on September

4    18, 2012 that a "Notice of Pendency of An Action" was filed a in Plaintiff's county as per

5    ORS § 93.740. Plaintiff sent a fax to NWTS with a copy of the Lis Pendens and phoned

6    multiple times requesting NWTS to cancel the trustee sale pending this litigation.

7          NWTS never responded, forcing Plaintiff to make a trip to the Washington County

8    courthouse in Hillsboro with a copy of her Lis Pendens to prevent the sale. Due to Plaintiff's

9    disabilities this was a hardship. The sale had been postponed; so the trip would not have been

10   necessary had NWTS had the common decency to return her calls and inform her of this.

11         Plaintiff spent several more frantic days before the next scheduled sale date

12   attempting to contact NWTS to find out whether they received a copy of her original

13   complaint and were willing to voluntarily cancel the trustee's sale pending the litigation.

14   Finally a NWTS employee returned her calls and said they could not postpone the sale

15   because their client, defendant Dovenmuehle, didn't want to.

16         Plaintiff repeated the same process of faxes and phone calls with Dovenmuehle with

17   the same no-response results. She found a phone number online that was answered by a live

18   person who instructed her to fax a copy of the Lis Pendens to him. However, again there was

19   no verification the sale was postponed or canceled. This person never again answered the

20   phone when she called, nor was there a response to her fax cover request to verify receipt.

21         Plaintiff had to make yet another trip to the Washington County courthouse in

22   Hillsboro with a copy of her Lis Pendens. This time the sale had been taken off the roster

1   instead of being postponed, but no one would or could assure her that the sale would not be
2   re-scheduled again without notice to her.

3          Prior to and after NWTS posted their "Notice" on her home several people had come
4   to her home, walked in her yard and took photographs of her house. This caused Plaintiff
5   extreme anxiety and fear. As a result, Plaintiff made a frantic attempt to prevent a fraudulent
6   sale of her home by painting on her garage door the case number for her federal complaint
7   and a message that Lis Pendens was filed to notify potential buyers of a pending legal action.

8          This had the unpleasant negative effect of public shame and embarrassment. This
9   could have been completely avoided had NWTS simply informed her that they would not
10  schedule another sale without a notice to her.

11         On January 15, 2013 the parade of people coming to Plaintiff's home started all over.
12  NWTS certainly knew litigation was pending by that time and a dispute over the debt existed.

13         NWTS's negligent disregard for the law and reckless disregard of whether it would
14  cause Plaintiff harm has caused Plaintiff much anxiety, mental distress and mental anguish. It
15  also caused Plaintiff severe stress that in turn resulted in additional physical pain and
16  suffering due to Plaintiff's specific disabilities and other health conditions.

17         Mental distress and personal injury caused by a party's negligent or intentionally
18  harmful behavior constitutes damage. A financial value can be determined for emotional and
19  personal injury damage, and Plaintiff states in her amended complaint that such financial
20  value would be determined in discovery.

1       The FDCPA provides for recovery of actual damages, 15 U.S.C. § 1692k(a)(1),

2    including emotional distress, *McNally v. Client Services, 2008 U.S. Dist. LEXIS 66845 (W.D.*

3    *Pa. 2008)*; and for statutory damages of up to $1000, 15 U.S.C. § 1692k(a)(2)(A).

4       The logic of NWTS's argument is similar to: "*I only tried to kill you. I didn't succeed.*

5    *No harm done. I still want to kill you and I'll keep trying; but since I didn't actually do, this*

6    *time, I shouldn't be held accountable for trying.*"

7       Plaintiff claims NWTS failed to perform its fiduciary duties as a trustee; and that

8    NWTS failed to adhere to the ethical standards held for attorneys by the Oregon Bar

9    Association. The owners of NWTS are attorneys. Plaintiff also claims in her amended

10    complaint that NWTS participated in a conspiracy to defraud that included the fraudulent

11    fabrication of mortgage documents it then presented and continues to present to courts in

12    foreclosures. Plaintiff claims NWTS has and does continue to conspire with other named and

13    un-named defendants in the furtherance of the objectives of this conspiracy to defraud. In

14    doing so they have caused Plaintiff harm and damages for which she is entitled to recover.

15       Disallowing litigation would harm the Plaintiff and prevent her from recovery of

16    damages specifically caused by NWTS's negligence and its blatant disregard for Federal law

17    and its fiduciary duties. NWTS has similarly harmed other homeowners, many who have

18    been deprived of their property because State courts rely on fraudulent mortgage documents

19    prepared by NWTS. This abuse and fraud will not stop until NWTS is held accountable.

20       Clearly a controversy between Plaintiff and NWTS still exists, regardless of whether

21    a trustee sale completed. NWTS in its role as a debt collector failed to comply with the

22    FDCPA, thereby posing a federal question. As such, this Court has original jurisdiction over

23    such matters pursuant to 28 U.S.C. § 1331; 15 U.S.C. NWTS still claims Plaintiff owes a

1   debt to its client, when in fact she does not. NWTS perpetrated and continues to perpetrate

2   fraud against Plaintiff and others

3       Therefore NWTS's motion to dismiss on grounds of mootness because no trustee sale

4   completed and that the court, thereby, lacks jurisdiction should be denied ➤

5       NWTS argues that without a "waiver" of Plaintiff's loan default and/or trust

6   beneficiary's rights Plaintiff's claim against NWTS is moot.

7       Plaintiff claims in her amended complaint that no valid default ever existed, therefore

8   no need for such a "waiver" exists. Defendant EMC falsely claimed such a default in 2005,

9   which was unequivocally proved false by Plaintiff's attorneys in 2006. Likewise, NWTS's

10  argument about Plaintiff not claiming that "she could or would cure the loan default" is

11  misconstrued. Plaintiff is not required to "cure" a default that doesn't exist. Plaintiff further

12  claims in her amended complaint that the party claiming to be the trust beneficiary in fact is

13  not; and had NWTS performed its duty under the FDCPA it would have discovered this.

14      Obviously, if the Plaintiff and NWTS still disagree about the existence of a default,

15  then a controversy still exists between the parties and Plaintiff's claim is not moot. Therefore,

16  NWTS's argument for dismissal based on Plaintiff's claims being moot should be denied. ➤

17  C. *Plaintiff's Failure to State a Claim*

18      NWTS argues that besides being moot, Plaintiff fails to make a claim against NWTS;

19  and that even if Plaintiff's claims were "ripe," they are not a viable claim against NWTS.

1    NWTS further argues that "Plaintiff cannot recover damages on the theory of

2    wrongful foreclosure". Plaintiff has not asked to recover damages on any theory of wrongful

3    foreclosure; but on actual damages and statutory damages pursuant the FDCPA, 15 U.S.C. §

4    1692k(a)(1) and 15 U.S.C. § 1692k(a)(2)(A); and she has claimed she is entitled to such

5    recovery, *McNally v. Client Services, 2008 U.S. Dist. LEXIS 66845 (W.D. Pa. 2008)*.

6    NWTS argues that Plaintiff's "negligent style" claims should be dismissed because

7    NWTS doesn't have any duty towards her in the absence of a special relationship.

8    If defendant NWTS (via its owners, attorneys Stephen Routh and David Fennell,)

9    committed or covered up fraud in their dealings with Plaintiff, or with the courts, the fact that

10   they did so in the capacity of attorney does not relieve NWTS of liability. (*Greenwood v.*

11   *Mooradian (1955) 137 Cal. App.2d 532, 539 [290 P.2d 955]; see Warner v. Roadshow*

12   *Attractions Co. (1942) 56 Cal. App.2d 1, 7 [132 P.2d 35]*.)

13   The limitations upon liability for negligence based upon the scope of an attorney's

14   duty of care do not apply to liability for fraud. (*Buckley v. Gray, supra, 110 Cal. 339, 342; cf.*

15   *Ultramares Corp. v. Touche (1931) 255 N.Y. 170, 189 [174 N.E. 441, 74 A.L.R. 1139]*.)

16   NWTS argues that minus a "special relationship" between NWTS and Plaintiff,

17   NWTS is not generally liable; however Since Ultramares Corp. v. Touche there has been a

18   steady erosion of the privity requirement extending the scope of professional liability to third

19   persons. In *Biakanja v. Irving (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358]*, the

20   intended beneficiary of a will which was denied probate because it was not properly attested

21   was allowed to recover damages from a notary public whose negligence caused the will to

22   fail. Likewise, in *Lucas v. Hamm (1961) 56 Cal.2d 583 [15 Cal. Rptr. 821, 364 P.2d 685]*,

23   *and Heyer v. Flaig (1969) 70 Cal.2d 223 [74 Cal. Rptr. 225, 449 P.2d 161]*, it was held that

1    an attorney who negligently drafted a will may be liable to a person who had not received the

2    share of the estate to which he would have been entitled if the will had been drafted in

3    accordance with the testator's intention. In Heyer the concept of privity as a bar to the

4    maintenance of an action in these circumstances was abandoned altogether, and it was held

5    that the defendant was liable not because he had breached a contract with the testator but

6    because he breached a duty owed directly to the injured party, i.e., that liability was based on

7    tort rather than on a contractual theory.

8             NWTS argues that the "Oregon Trust Deed Act expressly provides that a trustee owes

9    no fiduciary duty to the borrower/grantor of the trust deed." Whether or not the Oregon Trust

10   Deed Act provides the trustee with a fiduciary duty to the borrower/grantor; a trustee does

11   owe a fiduciary duty to the public not to cover up or perpetrate fraud. The attorney owners of

12   NWTS have a professional and ethical duty to not participate in, cover up or assist in the

13   perpetration of fraud.

14            The very word "trustee" implies trust and truthfulness. Trustees are generally held to

15   a "prudent person" standard in regard to meeting their fiduciary responsibilities, however

16   investment, legal, and other professionals can be held to a higher standard commensurate

17   with their higher expertise.

18            A national professional trade association of trustees acknowledges that trustees have a

19   fiduciary duty to determine whether the deed of trust is void. An article published in the

20   Spring 2008 issue of UTA Quarterly, a trade publication for trustees, states that a trustee can

21   be held liable for proceeding to sale with a void deed of trust; and that a trustee has an

22   obligation to determine whether or not a deed of trust is void before proceeding. *(A copy of*

1    *this article is attached as Exhibit A to Plaintiff's Response to NWTS's Motion to Dismiss.)*

2    Plaintiff claims in her amended complaint that her deed of trust is void.

3          NWTS argues that they do not have any such fiduciary or ethical responsibilities.

4    Perhaps this is why one of NWTS's attorney owners, David Fennell, is under investigation

5    for ethical violations by the Oregon Bar and was once suspended from practicing law by the

6    Washington Bar for the ethical violations of another company he and attorney Stephen Routh

7    operated together. Both Stephen Routh and David Fennell are, or were until recently, joint

8    owners of NWTS and RCO Legal, P.C. fka Routh Crabtree Olsen, P.C., i.e. the law firm

9    representing NWTS, in this action.

10         According to the Oregon Bar Association, although attorneys do not have an

11   obligation to disclose a client's participation in fraud, as this would be a breach of attorney

12   client privilege, attorneys must not engage in fraud, or cover up their client's fraud, or assist

13   their client in the perpetration of fraud. Doing so would be a breach of professional ethics

14   egregious enough to warrant disbarment.

15         The Oregon Code of Professional Conduct for Attorneys Rule 1.2 (c) "A lawyer shall

16   not counsel a client to engage, or assist a client, in conduct that the lawyer knows is illegal or

17   fraudulent..." Rule 3.3 (a) (3) "A lawyer shall not knowingly offer evidence that the lawyer

18   knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has

19   offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take

20   reasonable remedial measures..." Rule 3.3 (b) "A lawyer who represents a client in an

21   adjudicative proceeding and who knows that a person intends to engage, is engaging or has

22   engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable

23   remedial measures…"

1    Additionally, as officers of the court lawyers have an absolute ethical duty to tell

2    judges the truth, including avoiding dishonesty or evasion about reasons the attorney or

3    his/her client is not appearing, the location and validity of documents and other matters

4    related to conduct of the courts. "Fraud upon the court" has been defined by the 7th Circuit

5    Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the

6    court itself, or is a fraud perpetrated by officers of the court, i.e. attorneys, so that the judicial

7    machinery cannot perform in the usual manner its impartial tasks of adjudging cases that are

8    presented for adjudication. *"Kenner v C.I.R., 387 F.3d 689(1968); 7 Moore's Federal*

9    *Practice, 2d ed., p. 512, 60:23.* The 7th Circuit further stated "a decision produced by fraud

10   upon the court is not in essence a decision at all, and never becomes final."

11   Plaintiff in her amended complaint has claimed that NWTS, operating under the

12   instructions and orders of its attorney owners Stephen Routh and David Fennell, has

13   committed such fraud.

14   Therefore NWTS's arguments that Plaintiff's "negligent style" claims should be

15   dismissed because she doesn't have any special relationship with NWTS should be denied. ➤

16   NWTS argues that the Plaintiff's claim against NWTS is not "timely: and should

17   therefore be dismissed.

18   Plaintiff's claims against NWTS most certainly are timely. NWTS posted its Notice

19   on Plaintiff's house on or around May 20, 2012. Plaintiff's claims against NWTS arise from

20   its actions or negligence that transpired after that date.

1        In Oregon the statute of limitation for fraud is two years from the date of discovery.

2    Discovery of all fraud claims Plaintiff makes against NWTS and all other defendants named

3    in her complaint occurred between November 2011 and November 2012.

4        Therefore Plaintiff's claims are well within the statute of limitation and NWTS's

5    motion for dismissal based on these arguments about timeliness should be denied. ➤

6        NWTS argues that Plaintiff claims "styled as 'conspiracy'" are unclear. And that she

7    doesn't specify what law is the authority for her claims. NWTS argues that a civil conspiracy

8    requires an object to be accomplished, a meeting of minds on the object or course of action,

9    one or more overt acts, and damages as the proximate result thereof.

10        The conspiracy Plaintiff claims in her amended complaint consists of, but is not

11    limited to, the same criminal conspiracy for which Lorraine Brown, has already been

12    convicted by the U.S. Justice Department in favor of the United States. These claims are

13    based on the same authority as those criminal charges of conspiracy, 18 USC 63 et seq.,

14    (Mail Fraud and Other Fraud Offenses).

15        Additionally, Plaintiff's authority is claimed under:

> 18 USC § 1961 et seq., (Racketeer Influenced and Corrupt Organizations Act);
> 18 USC 47 et seq. (Fraud and False Statements);
> 18 USC § 1348 et seq. (Securities and Commodities Fraud);
> 18 USC Chapter 11, et seq., (Bribery, Graft, and Conflicts of Interest);
> 15 U.S.C. 1601 et seq., (Consumer Credit Protection and Truth in Lending Acts);
> 12 U.S.C. 27 et seq., (Real Estate Settlement Procedures Act, i.e. RESPA);
> 42 U.S.C. § 3601 et seq., (Fair Housing Act)
> 15 U.S.C. § 1691 et seq., (Equal Credit Opportunity Act);
> ORS § 162.065, (Perjury);
> Oregon § 164.085, (Theft by Deception);
> Oregon § 164.172, (Engaging in a financial transaction in property derived from unlawful activity)

1       The objective of the conspiracy claimed by Plaintiff in her amended complaint is the

2    obtaining of money and property by means of material false and fraudulent pretenses,

3    representations, and promises which by the very nature of its activities culminates in a trustee

4    sale. Whether or not a particular sale completes; victims are damaged by the entire process of

5    the conspiracy. NWTS plays a significant role in this conspiracy to defraud.

6       NWTS argues that "an agreement between the parties is a necessary element of a civil

7    action for conspiracy." NWTS and its legal arm, RCO Legal, P.C. fka Routh Crabtree Olsen,

8    P.C. has for more than ten years acted as an agent for and has legally represented defendants

9    JP Morgan Chase and its subsidiaries, Ally and its subsidiaries, Ocwen and its subsidiaries,

10   as well as, LNV, Dovenmuehle, MGC, Beal Bank and other Beal subsidiaries in hundreds to

11   thousands of foreclosures in Oregon and other States where NWTS operates. These

12   relationships between NWTS and the other defendants continue today.

13      The nature of these relationships would most certainly involve an agreement between

14   the parties, specifically agreements pertaining to foreclosures and trustee sales.

15      NWTS argues that "In order for a civil action for conspiracy to be maintainable, there

16   must be, in addition to a confederation of two or more persons, some unlawful act done in

17   furtherance of the conspiracy, and actual damages resulting to the victim/plaintiff."

18      NWTS in conjunction with its legal arm, RCO Legal, P.C. fka Routh Crabtree Olsen,

19   P.C., is one of the largest foreclosure mills in the western United States. They profit from and

20   participate in a conspiracy to defraud that includes fraudulent foreclosures.

21      The United States Attorney General, Eric Holder, along with the State Attorneys of

22   Florida and Michigan indicted Lorraine Brown, the founder and CEO of DocX aka Lender

23   Processing Services, Inc, aka Fidelity National Financial, Inc. for criminal fraud. (*United*

1   *States District Court Middle District of Florida Jacksonville District; United States of*

2   *America v. Lorraine Brown; case # 3:12-CR-198-J-25MLR.*)

3        Lorraine Brown plead guilty to conspiracy to commit fraud, of executing a scheme to

4   artifice to defraud, and to obtain money and property by means of material false and

5   fraudulent pretenses, representations, and promises by utilizing the United States mail and

6   private and commercial interstate carriers, and by transmitting and causing to be transmitted

7   by means of wire communications in interstate and foreign commerce, writings, signs, visual

8   pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of

9   Title 18, United States Code, Section 1343.

10       From Lorraine Brown's guilty plea for this criminal indictment:

11   *"The manner and means by which Brown, **her co-conspirators, and others** sought to*

12   *accomplish the purposes and objectives of the conspiracy included forging and falsifying*

13   *signatures on the mortgage-related documents that they prepared and filed with property*

14   *recorders' offices throughout the United States.*

15   *These documents, particularly mortgage assignments and lost note or assignment affidavits,*

16   *were later relied upon in court proceedings, including property foreclosures and in federal*

17   *bankruptcy court. Brown knew that these property recorders, as well as **those who received***

18   ***the documents such as courts**, title insurers, and homeowners, **relied on these documents***

19   ***as genuine.** "*

20       Plaintiff claims in her amended complaint that deed assignments and substitution of

21   trustee documents pertaining to her property were fraudulently fabricated; this was done by

22   Lorraine Brown's companies and her co-conspirators. The first of such documents filed in

23   2006 contained a stamp for defendant Fidelity National Title Co., a subsidiary of Fidelity

1   National Financial, Inc. A Securities Exchange Commission filing by Fidelity National Title

2   Co. shows that defendant LSI Title Company of Oregon, LLC., another company named on

3   fraudulently fabricated deed assignments pertaining to Plaintiff's property, operates as a

4   subsidiary of Lender Processing Services, Inc. (In fact, to the best of Plaintiff's knowledge,

5   the last "Substitution of Trustee" document filed in Plaintiff's county was in favor of LSI, so

6   a question exists as to whether NWTS even had legal authority to act as a substitute trustee.)

7          These very same documents were relied on by NWTS to proceed to a sale of

8   Plaintiff's home. In fact, NWTS was not motivated to validate these documents or Plaintiff's

9   alleged debt as required under the FDCPA because NWTS falsely fabricates mortgage

10  documents in the very same manner and means; and directly conspires with Lender

11  Processing Services to do so.

12         Testimony given by NWTS's employees Yvonne McElligott and Jeff Stenman in

13  depositions produced for *Reiner v. Northwest Trustee Services in the Superior Court of the*

14  *State of Washington in and for the county of King* on December 12, 2012, is consistent with

15  testimony given by employees of the Lorraine Brown companies in the U.S. Justice

16  Department's criminal case for the same criminal fraud conspiracy. This incriminates

17  NWTS.

18         These employees are not themselves, attorneys; they do their work without the

19  supervision of any attorney. They do, however, know the owner of the company is Steve

20  Routh, who is an attorney, but whom they rarely see. They have no knowledge about the

21  mortgage documents they sign. They sign as executive officers of companies other than

22  Northwest Trustee Services, when they are, in fact, not an executive officer of any company.

23  They sign the documents without a notary present and have no idea when the notary signs

1    them. They date the documents based on dates provided by the computer software they use,

2    which they call "The Desktop." The official name of this software is the "LPS" system. They

3    have and do regularly communicate with employees from Lender Processing Services, Inc.

4    regarding the mortgage documents they produce from this computer system. They have no

5    knowledge whether the companies named as beneficiaries on the documents they sign legally

6    existed on the dates they are claimed to have assigned the deed of trust. They have no

7    knowledge regarding the validity of the deed of trust and have never investigated the validity

8    of any documents they sign. They perform all their job duties and functions based on prompts

9    from this computer software they use. They have been performing these duties exactly the

10   same way for more than ten years.

11        The Defendants named in Plaintiff's amended complaint, and un-named others, use,

12   and/or interface with, the same computer software systems. This software is designed to

13   trigger certain pre-defined events and qualifiers that then prompt certain activities within the

14   racketeering scheme. This computer software is the glue that ties all these defendants

15   together, cements their relationships and agreements as co-conspirators; and co-ordinates all

16   their activities to meet the final objectives of their fraud scheme.

17        Unnamed co-conspirators, and others **are** named in the United States criminal case

18   against Brown and her companies, including Lender Processing Services, Inc.; **NWTS is one**

19   **of those un-named co-conspirators.**

20        A criminal conviction is conclusive proof and operates as an estoppel on defendants

21   as to the facts supporting the conviction in a subsequent civil action. *Local 167 of*

22   *International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America v.*

1    *United States, 291 U.S. 293, 298-99, 78 L. Ed. 804, 54 S. Ct. 396 (1934); Brown v. United*

2    *States, 207 Ct. Cl. 768, 524 F.2d 693, 705 (1975).*

3           "Yet they need not all be indicted or named.  Indeed, an indictment charging that the

4    named defendant and 'other persons unknown . . . did . . . conspire' was approved in *State v.*

5    *Hightower, 221 S.C. 91, 94, 69, S.E.2d 363, 366 (1952)[.]" McAninch & Fairey 481. In*

6    *Hightower, there was "ample evidence that the conspirators, though unknown, did exist."*

7    *McAninch & Fairey 481.*

8           Depositions of NWTS's employees show that NWTS knowingly participated in this

9    same conspiracy to defraud. Knowledge and participation in the conspiracy may be proven

10   by circumstantial evidence. *United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir. 1987).*

11          As long as at least one overt act is done by a member of the criminal conspiracy, then

12   all of the members of the conspiracy are considered to have committed the crime.

13          Criminal liability is sometimes referenced as the Pinkerton doctrine, which is based

14   on the seminal United States Supreme Court case of *United States v. Pinkerton, 328 U.S. 640*

15   *(1946).* Federal judges frequently describe the doctrine in jury instructions as "the hand of

16   one is the hand of all to the conspiracy." Below is an excerpt of a Pinkerton jury instruction

17   that was approved by the Fourth Circuit Court of Appeals in *United States v. Aramony, 88*

18   *F.3d 1369 (4th Cir. 1996):*

19          *"Whenever it appears beyond a reasonable doubt from the evidence in the case that a*

20          *conspiracy existed and that a defendant was one of the members, then the statements*

21          *thereafter knowingly made and the acts thereafter knowingly done by any person likewise*

22          *found to be a member may be considered by the jury as evidence in the case as to the*

23          *defendant found to have been a member, even though the statements and the acts may*

1    *have occurred in the absence of and without the knowledge of the defendant, provided*

2    *such statements and acts were knowingly made and done during the continuance of such*

3    *conspiracy and in furtherance of some object or purpose of the conspiracy.*

4    *Furthermore, all members of the conspiracy are equally guilty of all crimes committed*

5    *pursuant to and in furtherance of the conspiracy. For example, if, in the process of*

6    *committing the bank fraud pursuant to the conspiracy one of the co-conspirators illegally*

7    *laundered the money proceeds, all of the conspirators would be criminally liable for the*

8    *unlawful money laundering as well as the bank fraud and criminal conspiracy. " United*

9    *States v. Zabic, 745 F.2d 464, 474-75 (7th Cir. 1984).*

10    NWTS is equally guilty for all crimes committed by the conspiracy, including

11    damages caused to Plaintiff by the fraudulent deed assignments and other false mortgage

12    documents filed in her county in 2006. The Brown guilty plea included a condition for the

13    restitution of damages.

14    Therefore, NWTS's arguments that "Plaintiff's claims styled as 'conspiracy'" are

15    unclear and lack the required components to maintain them should be denied. ≻

16    NWTS argues that it only did what Plaintiff authorized it to do in the event of her

17    loan default; whereas Plaintiff's claims in her amended complaint that there is and never has

18    been a default of her mortgage. Defendant EMC falsely claimed such a default in 2005,

19    which was unequivocally proved false by Plaintiff's attorneys in 2006; and is substantiated

20    by the Bloomberg terminal showing it current in December 2005 when it was paid off.

21    Plaintiff also claims in her amended complaint that additional evidence discovered in 2012

22    proves her deed of trust was void since December 2005.

1        Therefore NWTS's argument pertaining to any authorization they allege she made for

2   NWTS to proceed to a sale should be denied. ➤

3        NWTS argues that Plaintiff did not plead particularity in her RICO claims. NWTS

4   argues that Plaintiff must claim each individual defendant engaged in a pattern of

5   racketeering activity, and alleges that Plaintiff failed to do so in her amended complaint; and

6   NWTS argues that a plaintiff must show that the predicate acts are related, and that they

7   amount to a threat of continued criminal activity. Contrary to NWTS's arguments Plaintiff

8   has claimed all these in her amended complaint.

9        The elements common to nearly all RICO violations are (a) a culpable "person" who

10  (b) willfully or knowingly (c) commits or conspires to the commission of "racketeering

11  activity" (d) through a "pattern" (e) involving a separate "enterprise" or "association in fact"

12  that (f) effects interstate or foreign commerce.

13       The "collection of an unlawful debt" is itself a RICO violation even without a

14  "pattern" of "racketeering activity." Plaintiff claims in her amended complaint that NWTS

15  attempted to collect an unlawful debt from her. Further attempts to collect this unlawful debt

16  will not stop unless this court hears Plaintiff's case and makes a final judgment about the

17  validity of the disputed debt. Disallowing litigation would harm the plaintiff.

18       NWTS is a culpable "person" as defined by RICO statues. RICO requires a "person"

19  who violated or conspired to violate Section 1962(a), (b), or (c). and in cases arising under

20  Section 1962(c), to be separate from the enterprise. NWTS operates as a separate enterprise

21  and did conspire directly with Lender Processing Services Inc.; and did conspire directly with

22  Defendants LVN Corporation and Dovenmuehle; and the same attorney owners of NWTS

1    operate a another separate enterprise, RCO Legal, P.C. fka Routh Crabtree Olsen, P.C.,

2    which also conspires with these and other Defendants named in Plaintiff's amended

3    complaint.

4          Section 1961(3) defines a "person" as an "entity capable of holding a legal or

5    beneficial interest in property." NWTS is capable of holding a legal interest in behalf of its

6    clients, who are capable of holding a beneficial interest in property.

7          Plaintiff claims in her amended complaint that NWTS willfully or knowingly

8    commits or conspires to the commission of "racketeering activity" – specifically as a co-

9    conspirator named in the criminal conspiracy conviction of Lorraine Brown for mail and wire

10   fraud in violation of Title 18, United States Code, Section 1343. (*United States District Court*

11   *Middle District of Florida Jacksonville District; United States of America v. Lorraine*

12   *Brown; case # 3:12-CR-198-J-25MLR.*) This conviction is conclusive in all facts pertaining

13   to the criminal conspiracy to defraud. The criminal charges are also conclusive in the effects

14   on interstate or foreign commerce. Plaintiff makes this specific claim as to NWTS, and to

15   other named Defendants that are also trustees and/or mortgage servicers and specific to each

16   Defendant that claimed to be a beneficiary of trust deeds and named as such on fraudulently

17   fabricated mortgage documents specific to Plaintiff's property filed with her county.

18         Plaintiff claims in her amended complaint that a broader pattern of racketeering

19   activity existed and still exists between the named Defendants in her amended complaint, and

20   the other named and un-named defendants in the conspiracy to defraud conviction in favor of

21   the Unites States. This broader pattern of racketeering activity has been claimed specific to

22   each of the Defendants named in her amended complaint.

1          Plaintiff's RICO claims in her amended complaint include more than two related

2    predicate acts; and she claims the pattern of criminal activity engaged in by the Defendants

3    did not arise out of a single contract or transaction, and in fact involved hundreds to

4    thousands of similar acts and/or contracts all having the same or similar purposes, results,

5    participants, victims, and methods of commission, and are otherwise interrelated by

6    distinguishing characteristics and are not isolated events.

7          Furthermore, United State's conviction of Lorraine Brown included charges that

8    *"After these false documents were signed and notarized, ...Many of these documents,*

9    *particularly mortgage assignments and lost note or assignment affidavits, were later **relied***

10   ***upon in court proceedings**, including property foreclosures and in federal bankruptcy court.*

11   *Brown **knew that these property recorders, as well as those who received the documents***

12   ***such as courts, title insurers, and homeowners, relied on these documents as genuine.** "*

13         When courts rely on such "false documents" presented to them by attorneys as

14   "genuine" then the decisions, orders and judgments of that court cannot be upheld. Under

15   these circumstances fraud upon the court has been committed.

16         "Fraud upon the court" makes void the orders and judgments of that court. It is also

17   clear and well-settled that any attempt to commit "fraud upon the court" vitiates the entire

18   proceeding. *The People of the State of Illinois v. Fred E. Sterling, 357 Ill.354;192 N.E. 229*

19   *(1934) ("The maxim that fraud vitiates every transaction into which it enters applies to*

20   *judgments as well as to contracts and other transactions."); In re Village of Willowbrook, 37*

21   *Ill. App.2d 393 (1962) ("It is axiomatic that fraud vitiates everything.").*

1        Under Federal law, when any officer of the court; i.e. attorney, has committed "fraud

2    upon the Court", the orders and judgment of that court arising from the fraud are void or of

3    no legal force or effect.

4        Too many State courts still rubber stamp foreclosures even when evidence exists that

5    deed assignments and mortgage documents contain forgeries and other misrepresentations of

6    material fact; and where the parties claiming to be beneficiaries cannot prove they are the

7    rightful beneficiaries; and where the deed of trust is void. The American people have lost

8    faith in our court system as a result of this.

9        These defendants have earned and continue to earn hundreds of trillions of dollars

10   with their fraud conspiracy and racketeering scheme. They have been, and still are being

11   sued, by States, Counties, and the United States. They make settlements, and promise to stop;

12   but they don't. Homeowners are still losing their homes to fraudulent foreclosures; loan

13   modifications are still nearly impossible to get; and the Defendants STILL deceive

14   homeowners who get them. Homeowners are discovering that the loss in their home's value

15   caused by the defendants and their co-conspirators racketeering activities that was supposed

16   to be forgiven was instead made into huge balloon payments at the end of the loan.

17       The racketeering activities that have harmed Plaintiff and so many other victims will

18   not stop until those participating in it are held accountable and made to pay restitution to their

19   victims. Consequences for their fraud and racketeering must be sufficiently high enough to

20   outweigh the millions or billions or trillions in profits they earn from their criminal activities.

21       Nothing will stop this fraud cash cow, until the courts enforce laws that already exist

22   to protect homeowners and prevent fraudulent trustee sales. Stop the fraudulent trustee sales

23   and the entire racketeering scheme will begin to crumble. When trustees like NWTS know

1    they can, and most likely will, be required to pay restitution for damages and face serious

2    financial consequences for fraud and other wrongdoing; as well as sanctions like disbarment

3    and imprisonment; the incentive to do the right thing will finally out weight the financial

4    incentive they now have to perpetrate such fraud.

5         Homeowner victims of fraudulent foreclosures are not the only ones harmed. We all

6    are damaged when money is siphoned into this fraud machine. We lose jobs and small

7    businesses; cities, counties and States lose funds to maintain roads, public transportation,

8    schools, parks, police, social services and more. These things benefit us all.

9         Plaintiff pled in her amended complaint that she has been directly injured by this

10   pattern of criminal activity. Her injuries are caused directly as a result of the predicate acts,

11   and she suffered "racketeering injury" in addition to injuries resulting from the predicate acts.

12        Sedima remains the Court's sole response to the question of civil RICO standing.

13   *Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985)* The Supreme Court implicitly

14   accepted the premise that the injurious consequences of the enterprise other than the injury

15   directly attributable to the fraudulent acts themselves would be recoverable. *Philatelic*

16   *Found. v. Kaplan, No. 85-8571 (S.D.N.Y. May 9, 1986) (LEXIS, Genfed library, Dist file)*

17   *(citing Sedima, 473 U.S. at 497 & n.15 ) (emphasis added), rev'd on other grounds, 647 F.*

18   *Supp. 1344 (S.D.N.Y. 1986); see also infra notes 48-49 and accompanying text (cases*

19   *upholding "directly or indirectly" related business injuries).*

20        Sedima, can appropriately be understood as holding that plaintiffs injured either

21   directly or indirectly by racketeering activity have standing to bring a private civil RICO suit.

22   The Court has, in its broad interpretation, expanded RICO standing to include those plaintiffs

23   suffering direct injury alone, as well as those suffering indirect injuries.

1    Therefore, NWTS's arguments that Plaintiff did not plead particularity, related

2    predicate acts, a pattern of racketeering activity to maintain a RICO claim against NWTS, or

3    claim a direct or indirect injury from the racketeering activities or the threat of continued

4    criminal activity should be denied. ➤

5    NWTS makes a vague argument pertaining to Plaintiff's disability claims; and to her

6    "RESPA" claims. The Plaintiff's RESPA claims are not specific to NWTS, however if the

7    evidence shows these claims to be part of the racketeering scheme to defraud, then NWTS is

8    to be held equally responsible with all other defendants that participated in the fraud even if

9    they didn't commit the act directly. *United States v. Aramony, 88 F.3d 1369 (4th Cir. 1996)*

10    Plaintiff has a disability that is protected under the Americans with Disabilities Act.

11    She is entitled to accommodations due to this disability to prevent discrimination against her.

12    Additionally, her disabilities were aggravated by the high prolonged stress and mental

13    anguish caused by the mortgage fraud and the numerous fraudulent attempts at trustee sales

14    of her home. Much of the horrific physical pain she has suffered since 2006 could have been

15    prevented had she not been forced to drop her health insurance to pay EMC extra money

16    each month for a default that never existed; and if her credit had not been destroyed by false

17    credit reporting and a forced bankruptcy to stop a fraudulent trustee's sale of her home in

18    2006. This prevented her from accessing health care that would have eased her pain and

19    prevented further damage to her body. Her disabilities and other health issues are well

20    documented; her doctors and other expert witnesses are prepared to testify as to Plaintiff's

21    claims. These facts are relevant to Plaintiff's damage claims and to the process of

1    determining fair restitution of these damages. They are also relative in the event injunctive

2    relief is required to prevent a fraudulent trustee sale from completing, which so far it hasn't.

3          HEPA laws protect the privacy of Plaintiff's medical records and she has stated in

4    both her complaints she will provide the judge with her medical records in camera. Plaintiff

5    is unclear about how she needs to do this, if requesting it in her complaint is not adequate.

6          Therefore, NWTS's argument pertaining to what it perceives as "Plaintiff's

7    disability" and "RESPA" claims should be denied. ➤


8    *D. Plaintiff's Failure to Comply with FRCP 9.*

9          NWTS argues that Plaintiff's claims fail to distinguish the alleged conduct of NWTS

10   vis-à-vis the other defendants. In alleging fraud or mistake, a party must state with

11   particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9.(b); and that

12   Plaintiff's amended complaint fails to comply.

13         The requirements of Fed. R. Civ. P. 9.(b) is met when there is sufficient identification

14   of the circumstances constituting the alleged fraud for the defendant to prepare an adequate

15   answer to the allegations. *Denny v. Carey 22 Ill.72 F.R.D. 574 (E.D. Pa. 1976) (bank fraud*

16   *not rigorous only sufficient) "Motion to dismiss was denied. "Rule 9(b) of the Federal Rules*

17   *of Civil Procedure was not meant to impose a rigorous burden on the plaintiffs. In securities*

18   *fraud class actions, when most of the allegations are within the knowledge of the defendant,*

19   *the plaintiff should be permitted to attempt to prove the allegations once Rule 9(b) of the*

20   *Federal Rules of Civil Procedure is satisfied. If the allegations of fraud are sufficiently*

21   *identified to give the defendant an opportunity to draft an "adequate answer," Rule 9(b) of*

22   *the Federal Rules of Civil Procedure is satisfied. Rule 9(b) was not meant to impose a*

1    *substantial burden over what is required under Rule 8. The complaint in question is adequate*

2    *under Rule 9(b) of the Federal Rules of Civil Procedure, especially because the allegations*

3    *involve information possessed by the defendant." Furthermore in Plaintiff's case before this*

4    *court indisputable evidence exists; (United States District Court Middle District of Florida*

5    *Jacksonville District; United States of America v. Lorraine Brown; case # 3:12-CR-198-J-*

6    *25MLR.)* NWTS did and does, in fact, participate in such a conspiracy to defraud as Plaintiff

7    claims in her amended complaint.

8          Again, specific to NWTS, Plaintiff claims in her amended complaint that they

9    violated the FDCPA; and they themselves produce fraudulent mortgage documents consistent

10   with the manner and means in which such documents were and are fraudulently produced by

11   Lorraine Brown's companies, for which the United States has already convicted Brown and

12   unnamed co-conspirators of conspiracy to defraud; and testimony given by NWTS

13   employees, Yvonne McElligott and Jeff Stenman, in depositions produced for *Reiner v.*

14   *Northwest Trustee Services in the Superior Court of the State of Washington in and for the*

15   *county of King* on December 12, 2012, incriminates NWTS as a co-conspirator with Brown,

16   and therefore already convicted of criminal conspiracy to defraud in favor of the United

17   States.

18          Plaintiff has already argued that a criminal conviction is conclusive proof and

19   operates as an estoppel on defendants as to the facts supporting the conviction in a

20   subsequent civil action. *Local 167 of International Brotherhood of Teamsters, Chauffeurs,*

21   *Stablemen & Helpers of America v. United States, 291 U.S. 293, 298-99, 78 L. Ed. 804, 54 S.*

22   *Ct. 396 (1934); Brown v. United States, 207 Ct. Cl. 768, 524 F.2d 693, 705 (1975).* And that

23   not all parties need to be named in an indictment charging that the named defendant and

1    'other persons· unknown' did conspire is sufficient to include NWTS in the criminal

2    conspiracy. *State v. Hightower, 221 S.C. 91, 94, 69, S.E.2d 363, 366 (1952)[.]" McAninch &*

3    *Fairey 481.* And as long as at least one overt act is done by a member of the criminal

4    conspiracy, then all of the members of the conspiracy are considered to have committed the

5    crime.

6           Therefore Plaintiff has stated a claim specific to NWTS in her pleadings and NWTS's

7    argument to dismiss her amended complaint on grounds that she fails to distinguish the

8    alleged conduct of NWTS vis-à-vis the other defendants should be denied. ➤


9           NWTS again argues Plaintiff's claims are time barred. Plaintiff's complaints against

10   NWTS began on or around May 20, 2012 when they posted a 'Notice' on her home. She has

11   stated a timely claim in her amended complaint, specific to NWTS, under the FDCPA and

12   for their negligence to perform their fiduciary duties and for conduct that violates the

13   professional ethics of the attorney owners of NWTS, and for their participation in a

14   conspiracy to defraud already convicted in favor of the United States; all of these acts by

15   NTWS caused harm to Plaintiff and transpired after on or after May 20, 2012.

16          Therefore NWTS's arguments to dismiss based on timeliness should be denied. ➤


17          NWTS argues that Plaintiff fails to comply with Fed. R. Civ. P.9(b). As with their

18   similar argument based on FRCP 8 it would be a grave miscarriage of justice to dismiss

19   Plaintiff's first amended complaint because she in unable to comply with FRCP 9 or other

20   procedural rule simply because she is not an attorney.

1        The Federal Courts are considered the "Guardians" of our Constitution. This Plaintiff

2    is the descendant of Revolutionary War veterans. This Plaintiff's father was a combat veteran

3    of WWII, the Korean War and the Vietnam War. This Plaintiff knows first-hand the

4    sacrifices made when Americans put their lives on the line to protect our Constitution of the

5    United States of America. This Plaintiff still remembers her fear as a child that her father

6    might not return home. This Plaintiff has uncles, great-uncles, and great-great-uncles many

7    generations back who didn't return home.

8        And now in her old age she is a witness to the erosion of the Constitutional rights of

9    average American citizens in favor of huge corporations; some of the very Defendants named

10   in her amended complaint, with more money than most of us can ever fathom; and that use

11   this enormous wealth to abuse the courts and deprive American citizens of their

12   Constitutional right to due process through fraud; and they have been getting away with it for

13   years. Is this the "democracy" we want to pass down to our grandchildren?

14       The Fourteenth Amendment to the U. S. Constitution holds that states must provide

15   due process and equal protection to those with a life, liberty, or property right. Due process

16   applies to individuals while equal protection applies to groups or classes of people. *Dixon v.*

17   *Ala. State Board of Education, 294 F.2d 150 (1961).*

18       A line of U. S. Supreme Court cases describe due process in terms of the proper

19   relationship between American citizens and their government. Substantive due process

20   means that the rule itself must be fair and the substance of the decision must have a sound

21   basis, *Kransow v. Virginia Polytechnic Institute 551 F.2d 591 (1977); Thomas v. Board of*

22   *Regents of the University of Texas; 355 F.Supp. 199 (1972).* When State courts rely on fraud

1    to make decisions that deprive citizens of their property no fairness exists and the decision

2    cannot be founded on a sound basis.

3          The courts are flooded with cases stemming from illegal foreclosures. Many of these

4    cases are poorer Americans representing themselves because fewer people are able to afford

5    attorneys due to the recession (caused by this same fraud conspiracy). At the same time

6    funding has been cut for legal aid programs and non-profit legal clinics. Self-represented

7    people are slowing down court dockets because they typically don't know what legal points

8    to argue or what motions to file. Plaintiff is an educated professional, yet she struggles with

9    these same problems. How can due process be possible for a person with less education than

10   the Plaintiff and no professional experience or training?

11         Constitutional concerns of due process and other civil rights violations clearly arise

12   from this situation. Federal courts have an obligation to the America people to uphold our

13   rights under the Constitution.

14         With or without attorneys, homeowners are terribly disadvantaged in the courts

15   against this fraud. Trustee sales proceeded with little interference because of intentionally

16   created complexity that bars all but the very wealthy from legally disputing the fraud; even if

17   they managed to understand what was happening. Plaintiff claims in her amended complaint

18   that the victims of this fraud were intentionally selected based on their membership in

19   economically disadvantaged groups, including minorities, female heads of household, and

20   seniors; which increased the likelihood they would lack financial resources to fight a

21   conspiracy to defraud of this magnitude.

22         If Plaintiff's amended complaint fails to comply with FRCP 9 then the remedy would

23   be to request Plaintiff to write yet another amended complaint; not to dismiss her complaint

1    entirely as NWTS's motions pleads. From Conley; *"There is legal sufficiency to show*

2    *Plaintiff is entitled to relief under her Complaint. A Complaint should not be dismissed for*

3    *failure to state a claim unless it appears beyond a doubt that the Plaintiff can prove no set of*

4    *facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S.*

5    *41, 45-46 (1957).*

6         Any such dismissal with prejudice would unequivocally be a violation of the

7    Plaintiff's Constitutional right to due process. The federal courts are entrusted with

8    upholding our Constitution and any plausibility standards that disproportionately harm pro se

9    litigants would also violate those litigants' Constitutional right to due process.

10        Therefore, NWTS's argument for dismissal with prejudice because Plaintiff's

11   amended complaint fails to comply with FRCP 9 should be denied. ➤

12                              **CONCLUSION**

13        By authority of laws and the Constitution of the United States of America, NWTS's

14   Motion to Dismiss should be denied in its entirety.

15

16

$$3|11|13$$