FILED 30 APR '13 12:39 USDC-ORP

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| In re:<br><br>DENISE SUBRAMANIAM, pro se,<br><br>　　　Plaintiff. | Case No. 3:12-CV-1681 MO |
| D. Andrew Beal et al.<br><br>　　　Defendants, | **DECLARATION OF**<br>**WILLIAM J. PAATALO** |

I, WILLIAM J. PAATALO, HEREBY DECLARE AS FOLLOWS:

1. I am an Oregon licensed private investigator under ORS 703.430, and have met the necessary requirements under ORS 703.415. My Oregon PSID number is 49411.

2. I am over the age of eighteen years, am of sound mind, having never been convicted of a felony or a crime or moral turpitude. I am competent in all respects to make this Declaration. I have personal knowledge of the matters declared herein, and if called to testify, I could and would competently testify thereto.

3. I have 17 years combined experience in law enforcement and the mortgage industry.

4. I worked in the mortgage industry from 1999 to 2008. I was a "loan officer" with Conseco Home Finance from 1999 to 2000 before becoming a "mortgage broker" from 2000 to 2008. I was the President of Midwestern Mortgage, LLC f/k/a Wissota Mortgage, LLC in Wisconsin and Minnesota from 2002 – 2008.

1. Declaration of William J. Paatalo

My company was strictly a "broker" for numerous lending institutions to which I would originate loans on their behalf. I was not a "lender," nor was I involved in "Table-Funding" loans.

5. I have worked exclusively over the last 30 months investigating foreclosure fraud and issues related to the securitization of residential and commercial mortgage loans.

6. I am a Certified Forensic Mortgage Loan Auditor (CFLA), and have spent more than 4,500 hours conducting investigatory research specifically related to mortgage securitization and chain of title analysis. I have performed such analyses for residential real estate located in many states, including, but not limited to Washington, Oregon, California, Nevada, Florida, Montana, Arizona, Ohio, New Jersey, and several other states.

7. As a result of the above education and experience I am familiar with issues involving securitization and foreclosure, and I have sufficient training and expertise to qualify as an expert.

8. My securitization and chain of title analyses here involve the factual aspects of securitization and chain of title.

9. In the performance of my securitization and chain of title audits I rely, as do all persons who perform specialized investigative work relating to the securitization of mortgage loans and chain of title issues, on a multitude of sources. These sources include, but are not limited to my Bloomberg subscription; ABSNet; Edgar (a search tool for Securities and Exchange Commission Filings); other paid subscription sources, including those related to known robosigners and foreclosure related documents.

10. I was retained by Denise Subramaniam to research the chain of title and securitization of her loan and to provide evidence pertaining to the

2. Declaration of William J. Paatalo

securitization of said loan. I was also asked to provide an opinion as to the
beneficiary status of the Subramaniam deed of trust and promissory note.

11. The following publicly recorded documents were inspected on the Securities
& Exchange Commission's (SEC) government website at
http://www.sec.gov/ :

A.The "BSABS 2004-HE4 Trust" 424b Prospectus Supplement filed May 26,
2004:  http://www.secinfo.com/dqTm6.1122.htm

B. The "BSABS 2004-HE4 Trust" Pooling & Servicing Agreement filed June
9, 2004: http://www.secinfo.com/dqTm6.114m.d.htm

12.In addition, the following exhibits were inspected and marked as follows:

C. "BP Investigative Agency Exhibits A-C" – Bloomberg Evidence
D. "BP Investigative Agency Exhibit D" – EMC Letter
E. "BP Investigative Agency Exhibit E" – MERS captures

13. After examining the above documents, my opinion is that the Subramaniam
loan was sold into the "BSABS 2004-HE4 Trust" on or before May 1, 2004;
the "Cut-off Date" for all loans to have been sold to the Trust.

14.The subject loan was originated on or about February 10th, 2004 with the
"Lender" on the Deed of Trust being named "People's Choice Home Loan,
Inc., a Wyoming Corporation" (hereinafter "People's.")

15.Shortly after origination, the evidence shows that the subject loan was sold to
the "Bear Stearns Asset Backed Securities I Trust 2004-HE4" (hereinafter
"BSABS 2004-HE4.") However, there are no admissions or evidence by way

3. Declaration of William J. Paatalo

of assignments that this ever happened. In fact, the entire sale of the subject loan, and its presence within the Trust, have been glossed over and hidden in the loan's chain of title history.

16. The following parties were named as Trust participants per the Trust's governing document (the "Pooling & Servicing Agreement" – PSA):

**Originators:**
The principal originators of the mortgage loans are: Encore Credit Corporation, with respect to approximately 30.38% of the mortgage loans and People's Choice Home Loans, Inc., with respect to approximately 58.78% of the mortgage loans. The remainder of the mortgage loans were originated by various originators, none of which have originated more than 10% of the mortgage loans.

**Depositor:**
Bear Stearns Asset Backed Securities I LLC, a Delaware limited liability company and a limited purpose finance subsidiary of The Bear Stearns Companies Inc. and an affiliate of Bear, Stearns & Co. Inc.

**Seller:**
EMC Mortgage Corporation, a Delaware corporation and an affiliate of the depositor and Bear, Stearns & Co. Inc., which will sell the mortgage loans to the depositor.

**Master Servicer:**
EMC Mortgage Corporation.

17. The "Cut-Off Date" for the loans to be transferred, sold, and conveyed to the Trust was May 1st, 2004. Here is what was supposed to happen per the PSA:

*CONVEYANCE OF TRUST FUNDREPRESENTATIONS AND WARRANTIES*

*Section 2.01 CONVEYANCE OF TRUST FUND.*

*Pursuant to the Mortgage Loan Purchase Agreement, the Seller sold, transferred, assigned, set over and otherwise conveyed to the Depositor, without recourse, all the right, title and interest of the Seller in and to the assets in the Trust Fund.*

4. Declaration of William J. Paatalo

*The Seller has entered into this Agreement in consideration for the purchase of the Mortgage Loans by the Depositor pursuant to the Mortgage Loan Purchase Agreement and has agreed to take the actions specified herein.*

*The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the use and benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund.*

*In connection with such sale, the Depositor has delivered to, and deposited with, the Trustee or the Custodian, as its agent, the following documents or instruments with respect to each Mortgage Loan so assigned: (i) the original Mortgage Note, including any riders thereto, endorsed without recourse to the order of "LaSalle Bank National Association, as Trustee for certificateholders of Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates, Series 2004-HE4," and showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee,*

**Section 11.04 INTENTION OF PARTIES.**

*It is the express intent of the parties hereto that the conveyance of the Mortgage Notes, Mortgages, assignments of Mortgages, title insurance policies and any modifications, extensions and/or assumption agreements and private mortgage insurance policies relating to the Mortgage Loans by the Seller to the Depositor, and by the Depositor to the Trustee be, and <u>be construed as, an absolute sale thereof to the Depositor or the Trustee, as applicable. It is, further, not the intention of the parties that such conveyance be deemed a pledge thereof by the Seller to the Depositor, or by the Depositor to the Trustee.</u>*

18. Subject loan was identified within the above referenced Trust using the Bloomberg Terminal. Bloomberg Exhibits A-C contain the following:

   **Exhibit A** - Subject loan identified as loan number "9722547" within the BSABS 2004-HE4 Trust, Group 0. (Note: Loan numbers often vary and change from the original loan numbers assigned to the original loan. Also, the "Orig Date" is typically the month following the actual month of origination. This particular loan number matches the loan number on the "EMC correspondence letter" dated 04/18/06 attached as an exhibit.)

5. Declaration of William J. Paatalo

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit B** - List of 15 "Tranche" Classes within the BSABS 2004-HE4 Trust showing 6 of the 15 tranches being "paid off."

**Exhibit C** – Loan level history / data within the BSABS 2004-HE4 Trust. Subject loan is # 108. The data runs perpendicular in the additional pages of the exhibit. The exhibit shows that the subject loan was "paid off" in December of 2005. The "pay history" shows that the subject loan was current ("C") as of November of 2005, 90-days past due ("9") as of October 2005, 60-days past due as of September 2005, and in foreclosure status ("F") as of August 2005. This coincides with the "EMC" letter dated 04/18/06, paragraph 4 – "Ms. Subramaniam's loan entered foreclosure proceedings on August 9, 200[5."]

19. The EMC letter also states in paragraph 2 – *"According to our records, EMC acquired the above referenced loan from People's Choice Home Loan on May 1, 2004."* What this letter fails to state is that EMC was the "Seller" of the loans to the "Depositor" (Bear Stearns Asset Backed Securities I LLC, a Delaware limited liability company and a limited purpose finance subsidiary of The Bear Stearns Companies Inc. and an affiliate of Bear, Stearns & Co. Inc.) on that very same day. Also on that very same day, the Depositor was to sell the loans to "LaSalle Bank, N.A. as Trustee for the BSABS 2004-HE4 Trust. This statement contradicts the recorded assignments of the DOT.

20. The Trust's Prospectus does however state, *"EMC Mortgage Corporation purchased the mortgage loans directly in privately negotiated transactions."* pg.22

6. Declaration of William J. Paatalo

21. None of these events took place, and none of the Trust entities ever perfected their security interests for the following reasons:

   A. There have been 3 assignments of the DOT recorded in the county land records. Assignment #1 was recorded on 06/28/06 as document No. 2006-077542. This assignment was allegedly executed on 12/29/05 whereby People's sells, assigns, transfers, and conveys the subject Note and DOT to "Homecomings Financial Network, Inc." (hereinafter "HFN.") This assignment circumvents the entire sale to EMC that was to have occurred on 05/01/04.

   This assignment also occurs within the same month that the subject loan was "paid off" within the BSABS 2004-HE4 Trust.

   B. The 2nd and 3rd assignments of the DOT are simultaneous. The 2nd is recorded on 08/27/08 as doc No. 2008-073971 whereby HFN attempts to assign, sell, convey, and deliver the Note and DOT to "Residential Funding Company, LLC" (hereinafter "RFC.") The 3rd is recorded on the same date as doc No. 2008-073972 whereby RFC attempts to assign, sell, convey, and deliver the Note and DOT to "LVN Corporation."

   The first "Notice of Default" which was recorded against the property on 06/28/06 as Doc. No. 2006-077544 states in paragraph 3, "*CAL-WESTERN RECONVEYANCE CORPORATION as Trustee, hereby certifies that no assignments of the trust deed by the trustee or by the beneficiary and no appointments of a successor trustee have been made except as recorded in the mortgage records of the county or counties in*

7. Declaration of William J. Paatalo

1   *which the above described real property is situate[d."]* This statement
2   confirms that no assignment was ever recorded evidencing a sale from
3   People's to any other Trust entity or the Trust itself. <u>This represents a fatal</u>
4   <u>break in the chain of title.</u>

5
6   22. The Trust's Prospectus states, *"Assignments of the mortgage loans provided to*
7   *the custodian on behalf of the trustee will be recorded in the appropriate*
8   *public office for real property records,"* pg. S-24.

9
10  23. To further cloud the title, the subject loan was assigned a MERS identification
11  number "MIN#1000221-0009722547-8" at some point after origination. A
12  check of the MERS Member directory showed that this number was assigned
13  to "JPMorgan Chase Bank, N.A. fka EMC."  MERS Captures 1&2 are
14  attached as an exhibit and show the subject loan as "inactive" in the MERS
15  Registry with JPMorgan Chase Bank, N.A. fka EMC as both the servicer and
16  investor.

17  24. Originated by MERS, the Mortgage Identification Number (MIN) is a unique
18  18-digit number used to track a mortgage loan throughout its life, from
19  origination to securitization to pay off or foreclosure. The MERS Quality
20  Assurance Procedures Manual Glossary defines "Deactivation" as follows:

21      "When a loan becomes inactive on the MERS System for one of the
22  following reasons:

23          • <u>Paid in Full</u> (includes payoff, deed in lieu, short sale, etc.)
24          • Transfer to non-MERS Status
25          • Involuntary transfer/default by Servicer
26          • Involuntary transfer/default by Subservicer
27          • Foreclosure Complete

8. Declaration of William J. Paatalo

• Reinstated or modified (option 1), not assigned back to MERS

25. The existence of MERS means that another assignment is missing from the chain of title, as some entity would have had to assign the subject note and DOT to MERS if registered in the MERS system. Because the MERS system shows "JPMorgan Chase Bank, N.A., fka EMC" as the owner and investor, both assignments #2 & #3 are inconsistent with the facts.

26. The failure to record the assignments and sales to the Trust entities, and the failure to disclose the Trust's interest in the subject Note and DOT and subsequent payoff of such, creates a fatal defect in the chain of title. Because the loan was sold to the BSABS 2004-HE4 Trust, as evidenced by the Bloomberg exhibits, and the fact that the subject loan was subsequently "paid off" within the trust, the parties now seeking to foreclose the Subramaniam DOT have no standing to seek such relief.

27. I declare under penalty of perjury under the laws of the State of Oregon and the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 26th day of April, 2013.


William J. Paatalo
Private Investigator – OR PSID# 49411
5200 SW Meadows Rd. #150
Lake Oswego, OR 97035
(503) 726-5954
Bill.bpia@gmail.com

9. Declaration of William J. Paatalo

CONFIDENTIAL

BP Investigative Agency
EXHIBIT
A

<HELP> for explanation.

Export                                           Residential Loan Search

Search By
■ Orig Loan Amount             Orig Date              ZIP
■ Loan Number                                                           Found 30 loans

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 9722547 | BSABS | 2004-HE4 | 0 | Paid Off | 176,000 | 6.99 | ARM | 03/2004 | 97005 |
| 0001502541 | RMSPL | 2004-1E | 0 | PIF | 176,000 | 8.24 | FIXED | 03/2004 |
| C11404736B | CRGT | 2003-1 | 0 | PIF | 176,000 | 7.18 | FIXED | 03/2004 |
| E43609031A | CRGT | 2006-1 | 0 | PIF | 176,000 | 9.27 | FIXED | 03/2004 |
| D13574392B | CRGT | 2004-2 | 0 | PIF | 176,000 | 6.90 | FIXED | 03/2004 |
| D10431169A | CRGT | 2004-2 | 0 | PIF | 176,000 | 5.71 | FIXED | 03/2004 |
| E43609671A | CRGT | 2004-2 | 0 | PIF | 176,000 | 7.30 | FIXED | 03/2004 |
| 0001488816 | RMSPL | 2004-1E | 0 | Current | 176,000 | 8.91 | FIXED | 03/2004 |
| 0001502848 | RMSPL | 2004-1E | 0 | PIF | 176,000 | 7.86 | FIXED | 03/2004 |
| D13574392A | CRGT | 2004-2 | 0 | PIF | 176,000 | 6.37 | FIXED | 03/2004 |
| B13646801A | CRGT | 2006-1 | 0 | PIF | 176,000 | 7.49 | FIXED | 03/2004 |
| 0001366673 | MSAC | 2004-NC6 | 0, 2 | Paid Off | 176,000 | 7.95 | ARM | 03/2004 |
| 7018478342 | GMSL | 2005-A | 0 | Paid Off | 176,000 | 6.00 | FIXED | 03/2004 |
| 7018473426 | GMSL | 2005-A | 0 | PIF | 176,000 | 6.00 | FIXED | 03/2004 |
| 0402113404 | MSAC | 2004-HE5 | 0, 1 | Paid Off | 176,000 | 7.13 | ARM | 03/2004 |
| 0401202429 | MSAC | 2004-HE5 | 0, 1 | Paid Off | 176,000 | 7.75 | ARM | 03/2004 |
| 44250234 | CWL | 2004-5 | 0, 3 | PIF | 176,000 | 4.99 | ARM | 03/2004 |
| 55439583 | CWL | 2004-BC3 | 0, 1 | PIF | 176,000 | 6.70 | ARM | 03/2004 |
| 55219871 | CWL | 2004-BC3 | 0, 1 | PIF | 176,000 | 6.85 | ARM | 03/2004 |
| 1695092266 | FNW | 2004-W3 | 0, 3,7,8 | Current | 176,000 | 6.25 | FIXED | 03/2004 |
| 1695089562 | FNW | 2004-W3 | 0, 1,4,5,8 | PIF | 176,000 | 6.13 | FIXED | 03/2004 |
| 1695090600 | FNW | 2004-W3 | 0, 2,4,6,8 | Paid Off | 176,000 | 6.25 | FIXED | 03/2004 |

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900    Singapore 65 6212 1000    U.S. 1 212 318 2000    Copyright 2012 Bloomberg Finance L.P.
SN 123029 EST  GMT-5:00 G627-2154-0 17-Nov-2012 16:55:18

CONFIDENTIAL

BP Investigative Agency
EXHIBIT. B

```
<HELP> for explanation.
Security not found
```

| | | | | | | |
|---|---|---|---|---|---|---|
| 15) Options | | | | | | View All Classes |

BSABS 2004-HE4  BEAR STEARNS ASSET BACKED SECURITIES TRUST                15 Classes
Template

| CC Class | Orig Face ($) | Cur Face ($000) | Cpn | WAL | Nxt Pmt/Mat | Description |
|---|---|---|---|---|---|---|
| 1) Pd A1 | 128,126 | 0 | 4.993 | 1.50 | 6/25/31 073879AW8 | FLT, IRC |
| 2) Pd A2 | 75,000 | 0 | 5.318 | 1.50 | 6/25/31 073879AX6 | FLT, IRC |
| 3) Pd A3 | 33,884 | 0 | 5.840 | 7.03 | 6/25/34 073879AY4 | FLT, STEP, IRC |
| 4) Pd M1 | 17,776 | 0 | 1.019 | 5.02 | 6/25/34 073879AZ1 | MEZ, FLT, STEP, IRC |
| 5) * M2 | 14,220 | 11,265 | 2.086 | 4.83 | 6/25/34 073879BA5 | MEZ, FLT, STEP, IRC |
| 6) * M3 | 4,444 | 4,118 | 2.536 | 4.73 | 6/25/34 073879BB3 | MEZ, FLT, STEP, IRC |
| 7) * M4 | 3,259 | 698 | 3.211 | 4.68 | 6/25/34 073879BC1 | MEZ, FLT, STEP, IRC |
| 8) * M5 | 3,555 | 1,096 | 3.736 | 4.63 | 6/25/34 073879BD9 | MEZ, FLT, STEP, IRC |
| 9) * M6 | 2,963 | 1,234 | 6.211 | 4.56 | 6/25/34 073879BE7 | MEZ, FLT, STEP, IRC |
| 10) * M7 | 5,332 | 487 | 6.211 | 0.00 | 6/25/34 073879BF4 | MEZ, FLT, STEP, IRC |
| 11) R1 | 0 | 0 | 0.000 | 0.00 | 6/25/34 073879BJ6 | R |
| 12) R2 | 0 | 0 | 0.000 | 0.00 | 6/25/34 073879BK3 | R |
| 13) RX | 0 | 0 | 0.000 | 0.00 | 6/25/34 073879BL1 | R |
| 14) Pd P | 0 | 0 | 0.000 | 0.00 | 6/25/34 073879BG2 | SUB, EXE |
| 15) Pd CE | 0 | 0 | 0.000 | 0.00 | 6/25/34 073879BH0 | SUB |

CONFIDENTIAL



<HELP> for explanation.
<MENU> Return to Previous Screen.

| 98 Stratify: None | 99 Export | | BSABS 2004-HE4 | | Loan Details |
|---|---|---|---|---|---|
| Group: | | | | | As of: 10/12 |
| | Cur Bal (000) | Pd | WAC | Curr Amt | | WAL | WLA |
| Inactive Loans | 1,722 | 0 | 0 | 77.94 | 276,151,269 | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 108. 9722547 | C96F63663CCCC3CCC3GC^C | | | 0 | 12/2005 | 12/2005 | | | |
| 109. 9722539 | CCCCCCCCCCCCCCCCCCCCCCCC | | | 0 | 07/2006 | 07/2006 | | | |
| 110. 9722521 | CCCCCCCCCCCCCCCCCCCCCCCC | | | 0 | 04/2006 | 04/2006 | | | |
| 111. 9722513 | CRRRRRRRRRRRRRRRRFFF999FF | | | 0 | 02/2007 | 02/2007 | | | |
| 112. 9722505 | CC3CCCCCCCCCC^^C | | | 0 | 05/2005 | 05/2005 | | | |
| 113. 9722497 | C9999F63CCCCCCCC^C | | | 0 | 08/2005 | 08/2005 | | | |
| 114. 9722489 | CCCCC^C | | | 0 | 09/2004 | 09/2004 | | | |
| 115. 9722463 | CCCCCCC^C | | | 0 | 11/2004 | 11/2004 | | | |
| 116. 9722455 | CCCCCCCCCCC^C | | | 0 | 04/2005 | 04/2005 | | | |
| 117. 9722448 | C33C3CCCC33CCC3CCCCCCCCC^ | | | 0 | 03/2006 | 03/2006 | | | |
| 118. 9722430 | C9663C6333CCCCCCCC^C | | | 0 | 10/2005 | 10/2005 | | | |
| 119. 9722422 | CCCCCCCCCC^C | | | 0 | 02/2005 | 02/2005 | | | |
| 120. 9722414 | CCCCCCCCCCCC^C | | | 0 | 04/2005 | 04/2005 | | | |
| 121. 9722406 | CCCCC^C | | | 0 | 10/2004 | 10/2004 | | | |
| 122. 9722398 | CCCCCCCCCCCCCCCCCCCCCCCC^ | | | 0 | 03/2006 | 03/2006 | | | |
| 123. 9722380 | CCCCC^^C | | | 0 | 09/2004 | 09/2004 | | | |
| 124. 9722372 | CCCCCCCCCCCCCC^C | | | 0 | 06/2005 | 06/2005 | | | |
| 125. 9722364 | CCCCCCCCCCCCC^C | | | 0 | 05/2005 | 05/2005 | | | |
| 126. 9722349 | CCCCCCCCCCCCCCCCCCCCCCCCC^ | | | 0 | 03/2006 | 03/2006 | | | |

\<HELP\> for explanation.
Screen Printed

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 9ᵗ Stratify: None ┤ 98 Export | | | BSABS 2004-HE1 | | | | | Loan Details |
| Group: | | | | | | | | As of: 10/12 |
| | Comb. Bal. &of (USD) | | | &%% IV | &omb | Obvyrnt | Run | WAY | |
| Inactive Loans | 1,722 | 0 | 0 | 77.94 | | 276,151,269 | | | |

| | | Pay. Curr. | Com. Bal | Coll. Lev | F. Tr Exp | F. Serv Act to Un | Amt |
|---|---|---|---|---|---|---|---|
| 108. | 9722547 | C96F63663CCCC3CCC3CC^C | 0 | | | | 176,000 |
| 109. | 9722539 | CCCCCCCCCCCCCCCCCCCCCCCC | 0 | | | | 373,500 |
| 110. | 9722521 | CCCCCCCCCCCCCCCCCCCCCCCC | 0 | | | | 279,200 |
| 111. | 9722513 | CRRRRRRRRRRRRRRRFFF999FF | 0 | | | | 45,000 |
| 112. | 9722505 | CC3CCCCCCCCCC^^C | 0 | | | | 151,725 |
| 113. | 9722497 | C9999F63CCCCCCCC^C | 0 | | | | 108,000 |
| 114. | 9722489 | CCCCC^C | 0 | | | | 519,000 |
| 115. | 9722463 | CCCCCCC^C | 0 | | | | 300,000 |
| 116. | 9722455 | CCCCCCCCCCCC^C | 0 | | | | 58,650 |
| 117. | 9722448 | C33C3CCCC33CCC3CCCCCCCC^ | 0 | | | | 182,400 |
| 118. | 9722430 | C9663C6333CCCCCCCC^C | 0 | | | | 75,200 |
| 119. | 9722422 | CCCCCCCCCC^C | 0 | | | | 180,000 |
| 120. | 9722414 | CCCCCCCCCCCC^C | 0 | | | | 346,750 |
| 121. | 9722406 | CCCCCC^C | 0 | | | | 48,500 |
| 122. | 9722398 | CCCCCCCCCCCCCCCCCCCCCCC^ | 0 | | | | 311,000 |
| 123. | 9722380 | CCCCC^^C | 0 | | | | 25,000 |
| 124. | 9722372 | CCCCCCCCCCCCCC^C | 0 | | | | 328,000 |
| 125. | 9722364 | CCCCCCCCCCCC^C | 0 | | | | 249,432 |
| 126. | 9722349 | CCCCCCCCCCCCCCCCCCCCCCCC^ | 0 | | | | 326,950 |

&lt;HELP&gt; for explanation.
Screen Printed

| 9) Stratify: None | 98) Export | BSABS 2004 HE4 | Loan Details |
|---|---|---|---|
| Group: | | | As of: 10/12 |

| | Count | Curr Amt ($00) | Rate | WAC | Seas | Orig Am. | | WAC | WLTV |
|---|---|---|---|---|---|---|---|---|---|
| Inactive Loans | 1,722 | 0 | 0 | 77.94 | | 276,151,269 | | | |

| | | | | Cur LTV | Rate | | Rem Term | Orig | |
|---|---|---|---|---|---|---|---|---|---|
| 10. 9722547 | C96F63663CCCC3CCC3CC^C | | 0 | 6.99 | | 0 | | Full | 78.2 |
| 10. 9722539 | CCCCCCCCCCCCCCCCCCCCCCCC | | 0 | 8.50 | | 0 | | Full | 90.0 |
| 11. 9722521 | CCCCCCCCCCCCCCCCCCCCCCCC | | 0 | 7.85 | | 0 | 35 | Unknown | 90.0 |
| 111. 9722513 | CRRRRRRRRRRRRRRRRFFF999FF | | 0 | 11.65 | | 0 | | Full | 90.0 |
| 112. 9722505 | CC3CCCCCCCCC^^C | | 0 | 8.50 | | 0 | | Full | 85.0 |
| 113. 9722497 | C9999F63CCCCCCCC^C | | 0 | 9.20 | | 0 | | Full | 83.1 |
| 114. 9722489 | CCCCC^C | | 0 | 6.65 | | 0 | | Unknown | 79.8 |
| 115. 9722463 | CCCCCCC^C | | 0 | 6.85 | | 0 | | Full | 84.5 |
| 116. 9722455 | CCCCCCCCCCCC^C | | 0 | 8.45 | | 0 | | Full | 85.0 |
| 117. 9722448 | C33C3CCCC33CCC3CCCCCCCC^ | | 0 | 6.85 | | 0 | | Unknown | 90.0 |
| 118. 9722430 | C9663C6333CCCCCCCC^C | | 0 | 9.25 | | 0 | | Unknown | 20.0 |
| 119. 9722422 | CCCCCCCCCC^C | | 0 | 7.25 | | 0 | | Unknown | 90.0 |
| 120. 9722414 | CCCCCCCCCCC^C | | 0 | 7.99 | | 0 | | Full | 93.7 |
| 121. 9722406 | CCCCCC^C | | 0 | 10.25 | | 0 | | Unknown | 69.3 |
| 122. 9722398 | CCCCCCCCCCCCCCCCCCCCCCCC^ | | 0 | 6.60 | | 0 | | Unknown | 79.7 |
| 123. 9722380 | CCCCC^^C | | 0 | 11.50 | | 0 | | Full | 23.8 |
| 124. 9722372 | CCCCCCCCCCCCCC^C | | 0 | 6.38 | | 0 | | Unknown | 80.0 |
| 125. 9722364 | CCCCCCCCCCCC^C | | 0 | 6.65 | | 0 | | Unknown | 80.0 |
| 126. 9722349 | CCCCCCCCCCCCCCCCCCCCCCC^ | | 0 | 6.30 | | 0 | | Unknown | 87.2 |

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900        Singapore 65 6212 1000        U.S. 1 212 318 2000        Copyright 2012 Bloomberg Finance L.P.
SN 123029 EST    GMT-5:00 H109-5-0 13-Nov-2012 12:22:50

&lt;HELP&gt; for explanation.
Screen Printed

| | 90) Stratify: None | 98) Export | BSABS 2004-HE4 | | | Loan Details |
|---|---|---|---|---|---|---|
| **Group:** | | | | | | **As of: 10/12** |

| | Count | Cur. Amt (USD) | Sen... | WAV LTV | WAorg... | Orig. Amt | WAc... | WAFI... | WAFI... |
|---|---|---|---|---|---|---|---|---|---|
| **Inactive Loans** | 1,722 | 0 | 0 | 77.94 | | 276,151,269 | | | |

| | | | Cur. Am... | Fir... | Fir... | As... | As... | As... |
|---|---|---|---|---|---|---|---|---|
| → 108. 9722547 | C96F63663CCCC3CCC3CC^C | | 0 | Full | 78.2 | .0 | 58.5 |
| 109. 9722539 | CCCCCCCCCCCCCCCCCCCCCCCCC | | 0 | Full | 90.0 | .0 | 57.6 |
| 110. 9722521 | CCCCCCCCCCCCCCCCCCCCCCCC | | 0 | Unknown | 80.0 | .0 | 57.1 |
| 111. 9722513 | CRRRRRRRRRRRRRRRFFF999FF | | 0 | Full | 90.0 | .0 | 82.6 |
| 112. 9722505 | CC3CCCCCCCCC^^C | | 0 | Full | 85.0 | .0 | 59.4 |
| 113. 9722497 | C9999F63CCCCCCCC^C | | 0 | Full | 83.1 | .0 | 79.2 |
| 114. 9722489 | CCCCC^C | | 0 | Unknown | 79.8 | .0 | 67.3 |
| 115. 9722463 | CCCCCC^C | | 0 | Full | 84.5 | .0 | 79.2 |
| 116. 9722455 | CCCCCCCCCCCC^C | | 0 | Full | 85.0 | .0 | 71.7 |
| 117. 9722448 | C33C3CCCC33CCC3CCCCCCCC^ | | 0 | Unknown | 80.0 | .0 | 73.9 |
| 118. 9722430 | C9663C6333CCCCCCCC^C | | 0 | Unknown | 20.0 | .0 | 18.3 |
| 119. 9722422 | CCCCCCCCCC^C | | 0 | Unknown | 90.0 | .0 | 69.9 |
| 120. 9722414 | CCCCCCCCCCCC^C | | 0 | Full | 93.7 | .0 | 73.3 |
| 121. 9722406 | CCCCCC^C | | 0 | Unknown | 69.3 | .0 | 67.9 |
| 122. 9722398 | CCCCCCCCCCCCCCCCCCCCCCC^ | | 0 | Unknown | 79.7 | .0 | 51.0 |
| 123. 9722380 | CCCCC^^C | | 0 | Full | 23.8 | .0 | 21.2 |
| 124. 9722372 | CCCCCCCCCCCCCC^C | | 0 | Unknown | 80.0 | .0 | 61.6 |
| 125. 9722364 | CCCCCCCCCCCC^C | | 0 | Unknown | 80.0 | .0 | 59.0 |
| 126. 9722349 | CCCCCCCCCCCCCCCCCCCCCCC^ | | 0 | Unknown | 87.2 | .0 | 61.2 |

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900    Singapore 65 6212 1000    U.S. 1 212 318 2000    Copyright 2012 Bloomberg Finance L.P.
SN 123029 EST  GMT-5:00 H109-6-0 13-Nov-2012 12:22:59

`<HELP> for explanation.`
Screen Printed

| 99 Stratify: None | 99 Export | | BSABS 2004 HE4 | | | | | Loan Details |
|---|---|---|---|---|---|---|---|---|
| Group: | | | | | | | | As of: 10/12 |
| | Loan Curr. Amt (000) | Rate | WAvg | | Orig Amt | | WAL | WAC |
| Inactive Loans | 1,722 | 0 | 0 | 77.94 | | 276,151,269 | | | |

| | | | Cur. Bal | Age | Mo | | | WAL | WAC |
|---|---|---|---|---|---|---|---|---|---|
| 108. 9722547 | C96F63663CCCC3CCC3CC^C | 0 | 21 | 0 | ARM | T1Y | -79 | 12.99 | 6.99 |
| 109. 9722539 | CCCCCCCCCCCCCCCCCCCCCCCCC | 0 | 28 | 0 | ARM | T1Y | -79 | 13.75 | 6.75 |
| 110. 9722521 | CCCCCCCCCCCCCCCCCCCCCCCC | 0 | 25 | 0 | ARM | T1Y | -79 | 12.85 | 5.85 |
| 111. 9722513 | CRRRRRRRRRRRRRRRRFFF999FF | 0 | 39 | 0 | FIXED | | | | |
| 112. 9722505 | CC3CCCCCCCCCC^^C | 0 | 15 | 0 | ARM | T1Y | -80 | 14.5 | 8.5 |
| 113. 9722497 | C9999F63CCCCCCCC^C | 0 | 17 | 0 | FIXED | | | | |
| 114. 9722489 | CCCCC^C | 0 | 6 | 0 | ARM | T1Y | -79 | 12.65 | 6.65 |
| 115. 9722463 | CCCCCC^C | 0 | 8 | 0 | ARM | T1Y | -79 | 12.85 | 6.85 |
| 116. 9722455 | CCCCCCCCCCCC^C | 0 | 13 | 0 | ARM | T1Y | -79 | 14.45 | 8.45 |
| 117. 9722448 | C33C3CCCC33CCC3CCCCCCCC^ | 0 | 24 | 0 | ARM | T1Y | -79 | 12.85 | 6.85 |
| 118. 9722430 | C9663C6333CCCCCCCC^C | 0 | 19 | 0 | FIXED | | | | |
| 119. 9722422 | CCCCCCCCCC^C | 0 | 11 | 0 | FIXED | | | | |
| 120. 9722414 | CCCCCCCCCCCC^C | 0 | 13 | 0 | ARM | T1Y | -67 | 13.99 | 7.99 |
| 121. 9722406 | CCCCCC^C | 0 | 7 | 0 | ARM | T1Y | -79 | 16.25 | 10.25 |
| 122. 9722398 | CCCCCCCCCCCCCCCCCCCCCCC^ | 0 | 24 | 0 | FIXED | | | | |
| 123. 9722380 | CCCCC^^C | 0 | 7 | 0 | FIXED | | | | |
| 124. 9722372 | CCCCCCCCCCCCCC^C | 0 | 15 | 0 | ARM | T1Y | -79 | 12.375 | 6.375 |
| 125. 9722364 | CCCCCCCCCCCC^C | 0 | 14 | 0 | ARM | T1Y | -67 | 12.65 | 6.65 |
| 126. 9722349 | CCCCCCCCCCCCCCCCCCCCCCCC^ | 0 | 24 | 0 | ARM | T1Y | -79 | 12.3 | 6.3 |

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900    Singapore 65 6212 1000    U.S. 1 212 318 2000    Copyright 2012 Bloomberg Finance L.P.
SN 123029 EST  GMT-5:00 H109-6-0 13-Nov-2012 12:23:07

&lt;HELP&gt; for explanation.
Screen Printed

| | | | | | BSABS 2004 HE4 | | Loan Details |
|---|---|---|---|---|---|---|---|
| Group: | | | | | | | As of: 10/12 |

| | Coun. | 90 Pnl (USD) | | #1 V Bara | Princípal | | WAL | WA F |
|---|---|---|---|---|---|---|---|---|
| Inactive Loans | 1,722 | 0 | 0 | 77.94 | | 276,151,269 | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 108. 9722547 | C96F63663CCCC3CCC3CC^C | | 0 | 1 | | 5.25 | OR | - | Paidoff |
| 109. 9722539 | CCCCCCCCCCCCCCCCCCCCCCCC | | 0 | 1 | | 3.75 | CA | - | Paidoff |
| 110. 9722521 | CCCCCCCCCCCCCCCCCCCCCCCC | | 0 | 1 | | 3.75 | CA | - | Paidoff |
| 111. 9722513 | CRRRRRRRRRRRRRRRFFF999FF | | 0 | | | | IN | - | Paidoff |
| 112. 9722505 | CC3CCCCCCCCCC^^C | | 0 | 1 | | 5.7 | NV | - | Paidoff |
| 113. 9722497 | C9999F63CCCCCCCC^C | | 0 | | | | MI | - | Paidoff |
| 114. 9722489 | CCCCC^C | | 0 | 1 | | 6 | CA | - | Paidoff |
| 115. 9722463 | CCCCCCC^C | | 0 | 1 | | 5.55 | IL | - | Paidoff |
| 116. 9722455 | CCCCCCCCCCCC^C | | 0 | 1 | | 5.25 | FL | - | Paidoff |
| 117. 9722448 | C33C3CCCC33CCC3CCCCCCCC^ | | 0 | 1 | | 6 | CO | - | Paidoff |
| 118. 9722430 | C9663C6333CCCCCCCC^C | | 0 | | | | TX | - | Paidoff |
| 119. 9722422 | CCCCCCCCCC^C | | 0 | | | | CA | - | Paidoff |
| 120. 9722414 | CCCCCCCCCCCC^C | | 0 | 1 | | 5.25 | CA | - | Paidoff |
| 121. 9722406 | CCCCC^C | | 0 | 1 | | 6 | MI | - | Paidoff |
| 122. 9722398 | CCCCCCCCCCCCCCCCCCCCCCC^ | | 0 | | | | CA | - | Paidoff |
| 123. 9722380 | CCCCC^^C | | 0 | | | | FL | - | Paidoff |
| 124. 9722372 | CCCCCCCCCCCCCC^C | | 0 | 1 | | 5.25 | CA | - | Paidoff |
| 125. 9722364 | CCCCCCCCCCCCC^C | | 0 | 1 | | 5.25 | CA | - | Paidoff |
| 126. 9722349 | CCCCCCCCCCCCCCCCCCCCCCC^ | | 0 | 1 | | 5.25 | CA | - | Paidoff |

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900    Singapore 65 6212 1000    U.S. 1 212 318 2000    Copyright 2012 Bloomberg Finance L.P.
SN 123029 EST    GMT-5:00 H189-6-0 13-Nov-2012 12:23:18

&lt;HELP&gt; for explanation.
Screen Printed

| | | | | | | BSABS 2004-HE1 | | | Loan Details |
|---|---|---|---|---|---|---|---|---|---|
| Group: | | | | | | | | | As of: 10/12 |
| Inactive Loans | 1,722 | | 0 | 0 | 77.94 | | 276,151,269 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 108. 9722547 | C96F63663CCCC3CCC3CC^C | | 0 | Paidoff | Single Housing | Own | Equity takeout |
| 109. 9722539 | CCCCCCCCCCCCCCCCCCCCCCCC | | 0 | Paidoff | Condo | Own | Purchase |
| 110. 9722521 | CCCCCCCCCCCCCCCCCCCCCCCC | | 0 | Paidoff | PUD (Planned Unit Develop | Own | Purchase |
| 111. 9722513 | CRRRRRRRRRRRRRRRRFFF999FF | | 0 | Paidoff | Single Housing | Inv | Purchase |
| 112. 9722505 | CC3CCCCCCCCC^^C | | 0 | Paidoff | Single Housing | Own | Refinance |
| 113. 9722497 | C9999F63CCCCCCCC^C | | 0 | Paidoff | Single Housing | Own | Refinance |
| 114. 9722489 | CCCCC^C | | 0 | Paidoff | Multi_Family-2F | Own | Equity takeout |
| 115. 9722463 | CCCCCCC^C | | 0 | Paidoff | Single Housing | Own | Equity takeout |
| 116. 9722455 | CCCCCCCCCCCC^C | | 0 | Paidoff | Single Housing | Inv | Purchase |
| 117. 9722448 | C33C3CCCC33CCC3CCCCCCCCC^ | | 0 | Paidoff | Single Housing | Own | Purchase |
| 118. 9722430 | C9663C6333CCCCCCCC^C | | 0 | Paidoff | Single Housing | Own | Purchase |
| 119. 9722422 | CCCCCCCCCC^C | | 0 | Paidoff | Single Housing | Own | Equity takeout |
| 120. 9722414 | CCCCCCCCCCCC^C | | 0 | Paidoff | Single Housing | Own | Refinance |
| 121. 9722406 | CCCCC^C | | 0 | Paidoff | Single Housing | Inv | Purchase |
| 122. 9722398 | CCCCCCCCCCCCCCCCCCCCCCCC^ | | 0 | Paidoff | Multi_Family-2F | Own | Equity takeout |
| 123. 9722380 | CCCCC^^C | | 0 | Paidoff | Single Housing | Own | Purchase |
| 124. 9722372 | CCCCCCCCCCCCCC^C | | 0 | Paidoff | Single Housing | Own | Purchase |
| 125. 9722364 | CCCCCCCCCCCCC^C | | 0 | Paidoff | Single Housing | Own | Purchase |
| 126. 9722349 | CCCCCCCCCCCCCCCCCCCCCCCC^ | | 0 | Paidoff | Single Housing | Own | Equity takeout |

`<HELP>` for explanation.
Screen Printed

| 97 Stratify: None | 99 Export | | BSABS 2004-HL4 | | | | Loan Details |
|---|---|---|---|---|---|---|---|
| Group: | | | I | | | | As of: 10/12 |

| | Curr Bal Amt (000) | Bal | WAC % | | Orig Bal | WAC | WAM | WALA |
|---|---|---|---|---|---|---|---|
| **Inactive Loans** | 1,722 | 0 | 0 | 77.94 | | 276,151,269 | | |

| | | ID Number | Cur Amt | | | | | F | Mos |
|---|---|---|---|---|---|---|---|---|---|
| → | 108. 9722547 | C96F63663CCCC3CCC3CC^C | 0 | 03/2004 | 97005 | Portland-Vancouver-Beave | 0.50 |
| | 109. 9722539 | CCCCCCCCCCCCCCCCCCCCCCCC | 0 | 03/2004 | 91302 | Los Angeles-Long Beach-S | 0.50 |
| | 110. 9722521 | CCCCCCCCCCCCCCCCCCCCCCCCC | 0 | 03/2004 | 94544 | San Francisco-Oakland-Fre | 0.50 |
| | 111. 9722513 | CRRRRRRRRRRRRRRRRFFF999FF | 0 | 11/2003 | 46803 | Fort Wayne, IN | 0.50 |
| | 112. 9722505 | CC3CCCCCCCCCCC^^C | 0 | 02/2004 | 89142 | Las Vegas-Paradise, NV | 0.50 |
| | 113. 9722497 | C9999F63CCCCCCCC^C | 0 | 03/2004 | 48237 | Detroit-Warren-Livonia, MI | 0.50 |
| | 114. 9722489 | CCCCC^C | 0 | 03/2004 | 90241 | Los Angeles-Long Beach-S | 0.50 |
| | 115. 9722463 | CCCCCCC^C | 0 | 03/2004 | 60076 | Chicago-Naperville-Joliet, | 0.50 |
| | 116. 9722455 | CCCCCCCCCCCC^C | 0 | 03/2004 | 32206 | Jacksonville, FL | 0.50 |
| | 117. 9722448 | C33C3CCCC33CCC3CCCCCCCC^ | 0 | 03/2004 | 80211 | Denver-Aurora, CO | 0.50 |
| | 118. 9722430 | C9663C6333CCCCCCCC^C | 0 | 03/2004 | 77007 | Houston-Sugar Land-Bayto | 0.50 |
| | 119. 9722422 | CCCCCCCCCC^C | 0 | 03/2004 | 92335 | Riverside-San Bernardino- | 0.50 |
| | 120. 9722414 | CCCCCCCCCCCC^C | 0 | 03/2004 | 93065 | Oxnard-Thousand Oaks-Ve | 0.50 |
| | 121. 9722406 | CCCCCC^C | 0 | 03/2004 | 48215 | Detroit-Warren-Livonia, MI | 0.50 |
| | 122. 9722398 | CCCCCCCCCCCCCCCCCCCCCCCC^ | 0 | 03/2004 | 91731 | Los Angeles-Long Beach-S | 0.50 |
| | 123. 9722380 | CCCCC^^C | 0 | 02/2004 | 34659 | | 0.50 |
| | 124. 9722372 | CCCCCCCCCCCCCC^C | 0 | 03/2004 | 94303 | San Jose-Sunnyvale-Santa | 0.50 |
| | 125. 9722364 | CCCCCCCCCCCC^C | 0 | 03/2004 | 95363 | Modesto, CA | 0.50 |
| | 126. 9722349 | CCCCCCCCCCCCCCCCCCCCCCCC^ | 0 | 03/2004 | 95023 | San Jose-Sunnyvale-Santa | 0.50 |

BP Investigative Agency
EXHIBIT
D



**EMC**
*Mortgage Corporation*

April 18, 2006

State of Oregon
Department of Consumer and Business Services
Attention: Timothy C. Spencer
P.O. Box 14480
Salem, OR 97309-0405

Re:  Loan Number:        0009722547
     Mortgagor:          Denise Subramaniam
     Property Address:   13865 S.W. Walker Rd.
                         Beaverton, OR 97005

Dear Timothy C. Spencer:

EMC Mortgage Corporation (EMC) is dedicated to providing the highest level of customer service. Your concerns are very important to us, and we appreciate the opportunity to provide you with the following information regarding the servicing of this account.

According to our records, EMC acquired the above-referenced loan from People's Choice Home Loan on May 1, 2004. We have enclosed a copy of the Welcome Letter we mailed to Ms. Subramaniam following the transfer. In addition, we have enclosed a copy of our mortgagor's loan history. The first payment EMC received for this loan, in the amount of $1,169.76, was applied on July 1, 2004 as the May 2004 installment. The June 2004 installment was applied to the loan on July 6, 2004, and a payment in the amount of $2,339.52 was applied toward the July 2004 and August 2004 installments on August 23, 2004. Our records indicate that we did not receive a payment in September 2004, October 2004, March 2005, July 2005 or August 2005. If our mortgagor is in dispute of our findings, she may forward front and back copies of cancelled checks for the payments in question to the mailing address below. If our research confirms that any payments are missing, we will make the appropriate adjustments to our credit reporting.

Ms. Subramaniam's loan entered foreclosure proceedings on August 9, 2005, at which time the loan was past due for the May 2005 installment. Foreclosure action was suspended on September 16, 2005, when our mortgagor entered a forbearance agreement. Under the terms of this agreement, our mortgagor was required to pay $1,349.76 by the 12th of each month from October 2005 through September 2006. Please be advised that we allowed our mortgagor to remit several of her payments after the stipulated due date, and we maintained this agreement with our mortgagor until the loan was transferred to GMAC-RFC/Homecomings (GMAC) on February 9, 2006.

Mac Arthur Ridge II, 909 Hidden Ridge Drive, Suite 200, Irving, Texas 75038
MAILING ADDRESS: P.O. Box 141358, Irving, Texas 75014-1358

State of Oregon
April 18, 2006
Page Two

Our records reflect that Ms. Subramaniam's property insurance policy was cancelled on March 15, 2005, requiring EMC to establish lender-placed insurance and create an escrow account for payment of this coverage. A disbursement for this insurance in the amount of $1,486.00 was paid from our mortgagor's escrow account on May 25, 2005. A partial refund in the amount of $139.00 was forwarded to GMAC on February 15, 2006 for the unused portion of this policy. If our mortgagor is in possession of evidence of continuous coverage since March 2005, she may forward it to our mailing address so that we may disburse an additional refund to GMAC to reimburse Ms. Subramaniam's account. In addition, our records reflect that EMC issued a disbursement from the escrow account to our mortgagor's county tax office in the amount of $2,107.34 for delinquent taxes due in October 2004 on October 17, 2005, and a separate disbursement for taxes due in October 2005 in the amount of $2,269.74 on November 10, 2005. Please be advised that our mortgagor's forbearance agreement did not include repayment for the tax and insurance escrow advances.

According to the enclosed Note, this loan has an adjustable interest rate, starting at 6.99 percent at the origination of the loan, and subject to change after two years. In a letter dated January 26, 2006, we informed Ms. Subramaniam that her interest rate would increase to 9.99 percent effective with the April 2006 installment. Please be advised that our mortgagor's forbearance agreement did not change the interest rate terms of the Note. In addition, the Note reflects a prepayment penalty in effect for the first two years of the mortgage.

Please note that we are unable to provide Ms. Subramaniam with a payoff statement, as we are no longer servicing her loan. If Ms. Subramaniam would like to obtain a payoff statement, or if she has any questions regarding the current servicing of her loan, she may contact GMAC at 1-800-247-9727.

Should you have any further questions regarding EMC's servicing of this mortgage loan, please call our Customer Service Executive Desk at 1-800-695-7695, extension 7377, Monday through Friday between the hours of 7:30 a.m. and 4:30 p.m. Central Time.

Sincerely,

Matt Pearce
Research Specialist

Enclosures:    Welcome Letter
               Loan History
               Note

cc:    Denise Subramaniam
       13865 S.W. Walker Rd.
       Beaverton, OR 97005

BP Investigative Agency
EXHIBIT
E



**Process Loans, Not Paperwork™**

www.mers-servicerid.org

---

MERS® ServiceriD – Investor – Windows Internet Explorer

https://www.mers-servicerid.org/sis/investor

Need help? ❓

is: **Inactive**

00) 848-9136

y the Investor name.

Select borrower type and enter borrower information to see Investor for MIN 1000221-0009722547-8.

🔵 **Investor for Individual Borrower**

Your entries may be either upper or lower case.

Fields marked ✳ are required.

**Last Name:** subramaniam ✳

**SSN:** [ ] - [ ] - [ ] ✳

☑ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer. ✳

[Submit]

www.mersinc.org

🔵 **Investor for Corporation/Non-Person Entity Borrower**

**Servicer:** JPMorgan Chase Bank, N.A.fka EMC
Monroe, LA

**Phone: (800) 848-9136**

**Investor:** JPMorgan Chase Bank, N.A.fka EMC



**MERS**
**ServicerID**
www.mers-servicerid.org

## Process Loans, Not Paperwork™

## 1 record matched your search:

**Need help?** ❓

MIN: **1000221-0009722547-8**          Note Date: **02/10/2004**          MIN Status: **Inactive**

Servicer:  JPMorgan Chase Bank, N.A.fka EMC                                   Phone: **(800) 848-9136**
           **Monroe, LA**

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

Copyright© 2012 by MERSCORP Holdings, Inc.

# Salesxp00893

**Affidavit–Denise–Subramaniam.pdf**
**04/30/13   10:44 AM**



# AFFIDAVIT

RE: Subramaniam v. Beal, et al
Case No. 3:12-cv-1681

I, Denise Subramaniam, being duly sworn state as follows:

I am the Plaintiff in this case. Before I became too disabled to work I enjoyed a long career as a software engineer. I earned a six figure yearly income from my profession; verifiable with financial records.

I had an underlying disability all my life. However, I learned to compensate for it and through much hard work I acquired an education and built a career as a software engineer to support my family as a single mother after my husband was unable to cope following the death of our youngest son and left us.

The prolonged and excessive stress and anxiety caused by fear of losing our home due to the Defendants' unlawful actions undermined my ability to compensate for my disabilities and caused a major downturn in my overall health. Defendants' unlawful actions and unlawful damage to my credit affected my ability to re-obtain health insurance and that in turn delayed or prevented me from obtaining medical treatment that could have prevented permanent physical damage and severe chronic pain; these delays caused additional personal injury; and this in turn eventually led to my inability work. This also caused me to pay significant out-of-pocket medical expenses above what I would have paid in insurance premiums had my credit not been unlawfully damaged. These facts can be verified with medical and financial records.

Prior to becoming too disabled to work, unlawful damage to my credit caused loss of employment as credit checks are routine for professional employment. Unlawful damage to my credit barred me from obtaining contracts through my own technology company. In 2008 and 2009 I built a good credit history for my company hoping to overcome the hardships of my damaged personal credit. I spent thousands of dollars and hundreds of hours of my time to prepare and submit bid proposals. I paid for travel expenses to bring team members with me to meet prospective clients when my company was selected among the top bidders, only to learn a check of my personal credit was still required before they would select my company as their vendor. Financial and other records will prove this.

I have suffered significant financial damage, personal injury and extreme mental distress as direct and indirect results of the named Defendants', including MGC Mortgage's conspiracy to defraud me and to collect an illegal debt from me; and by their other unlawful actions with intent to unlawfully deprive me of my property which is my home and which accommodates the specific needs of my disabilities.

I am in regular contact with numerous other victims of fraudulent foreclosures initiated by the MGC Mortgage, LNV Corporation and Dovenmuehle Mortgage trio of companies. These victims are predominately minorities, female heads of household and seniors. Each of these victims experienced similar false claims of missed payments or misappropriated payments either with MGC or with a predecessor that in turn led to false default, false mortgage related documents, and fraudulent foreclosure. Additionally MGC and LNV have committed a pattern of "fraud upon the court" because as they have done here and because they continue to submit false documents, of which they know to be false, to State and Federal courts across our country.

I have personally spoken with an elderly couple that paid their final mortgage payment to MGC. When after six months they had not received the canceled note and clear title to their property from MGC they complained and were told they still owed $2,500. The couple paid this, yet still did not receive the

canceled note. When they complained again they received a Notice of Default and trustee sale. This couple and other witnesses with similar experiences with MGC are available to testify.

I have personally spoken with a person willing to testify and present evidence in the form of a memo between a Texas State official and an attorney in the employ of D. Andrew Beal regarding complaints made by consumers against MGC. The memo is a threat made to the Texas official regarding disclosure of certain incriminating information about MGC. This witness also has printed confirmation of a consumer's wire transfer for nearly $200,000 made payable to Homecomings Financial Network, Inc. that was deposited into a personal account for Stephen Costas, a senior executive officer for many of Beal's companies and corporations. This person fears his/her life will be in jeopardy if his/her name is disclosed.

Collectively with other MGC/LNV victims, some with open cases in State and Federal courts, I have investigated these companies and their ultimate parent corporation Beal Bank, and its sole owner, D. Andrew Beal. We have amassed a collection of documentary evidence that we are prepared to present to this court to prove my RICO claims against these defendants. Other victims are willing and able to testify as to their knowledge of MGC's fraudulent business practices and their RICO conspiracy to defraud me and other homeowners of our real property. Some of these victims gave me permission to use their documentary evidence as exhibits to my Objection to MGC's Motion to Dismiss so as to conclusively show this court that evidence does in fact exist to prove my RICO claims.

My direct financial losses exceed $4,000,000. Loss of income and future income accounts for more than half of this estimate; but also included is the increased cost of insurance and interest expenses due to unlawful credit damage; out-of-pocket medical costs above what health insurance would have cost prior to the defendants' bad acts; cost of future medical care; attorney fees paid prior to my becoming impoverished by my inability to work; loss in property value etc. Not included in this estimate is the cost of personal injury and emotional duress caused by the Defendants unlawful actions. I have no idea how to place a monetary value on the horrific physical pain and suffering I have had to endure since 2006, but there are professionals who can make such a determination; and this is a matter for discovery. This entire mess could have been avoided if any one of these Defendants had conducted their businesses in an honest and ethical manner and addressed my complaints about misappropriated payments back in 2005 and again in 2008 and 2010; this did not happen because they made more money from defaults and foreclosures. I never was in default; the evidence will prove this fact. These Defendants have destroyed my life for their own unjust financial gain.

These Defendants have caused me to suffer significant losses and by law I am entitled to compensation for loss or injury. Considering the Defendants egregious lack of concern for the human suffering they cause through their fraud and their "above the law" attitude I believe punitive damages should also be awarded. Furthermore, these Defendants have unjustly enriched themselves through a RICO conspiracy to defraud me and others; these wrongs create an obligation for them to make restitution to their victims.

I have evidence to prove my claims stated in my Amended Complaint. I can present witnesses to the court, including expert witnesses, who can testify as to their knowledge of facts material to my complaint and to the culpability of the named Defendants, including MGC. I believe my rights to due process under the Fifth and Fourteenth Amendments of our Constitution would be denied if MGC's Motion to dismiss were granted.

Denise Subramaniam

# Salesxp00893

**Affidavit–Denise–Subramaniam.pdf**
**04/30/13   10:44 AM**



# AFFIDAVIT

RE: Subramaniam v. Beal, et al
Case No. 3:12-cv-1681

I, Denise Subramaniam, being duly sworn state as follows:

I am the Plaintiff in this case. Before I became too disabled to work I enjoyed a long career as a software engineer. I earned a six figure yearly income from my profession; verifiable with financial records.

I had an underlying disability all my life. However, I learned to compensate for it and through much hard work I acquired an education and built a career as a software engineer to support my family as a single mother after my husband was unable to cope following the death of our youngest son and left us.

The prolonged and excessive stress and anxiety caused by fear of losing our home due to the Defendants' unlawful actions undermined my ability to compensate for my disabilities and caused a major downturn in my overall health. Defendants' unlawful actions and unlawful damage to my credit affected my ability to re-obtain health insurance and that in turn delayed or prevented me from obtaining medical treatment that could have prevented permanent physical damage and severe chronic pain; these delays caused additional personal injury; and this in turn eventually led to my inability work. This also caused me to pay significant out-of-pocket medical expenses above what I would have paid in insurance premiums had my credit not been unlawfully damaged. These facts can be verified with medical and financial records.

Prior to becoming too disabled to work, unlawful damage to my credit caused loss of employment as credit checks are routine for professional employment. Unlawful damage to my credit barred me from obtaining contracts through my own technology company. In 2008 and 2009 I built a good credit history for my company hoping to overcome the hardships of my damaged personal credit. I spent thousands of dollars and hundreds of hours of my time to prepare and submit bid proposals. I paid for travel expenses to bring team members with me to meet prospective clients when my company was selected among the top bidders, only to learn a check of my personal credit was still required before they would select my company as their vendor. Financial and other records will prove this.

I have suffered significant financial damage, personal injury and extreme mental distress as direct and indirect results of the named Defendants', including MGC Mortgage's conspiracy to defraud me and to collect an illegal debt from me; and by their other unlawful actions with intent to unlawfully deprive me of my property which is my home and which accommodates the specific needs of my disabilities.

I am in regular contact with numerous other victims of fraudulent foreclosures initiated by the MGC Mortgage, LNV Corporation and Dovenmuehle Mortgage trio of companies. These victims are predominately minorities, female heads of household and seniors. Each of these victims experienced similar false claims of missed payments or misappropriated payments either with MGC or with a predecessor that in turn led to false default, false mortgage related documents, and fraudulent foreclosure. Additionally MGC and LNV have committed a pattern of "fraud upon the court" because as they have done here and because they continue to submit false documents, of which they know to be false, to State and Federal courts across our country.

I have personally spoken with an elderly couple that paid their final mortgage payment to MGC. When after six months they had not received the canceled note and clear title to their property from MGC they complained and were told they still owed $2,500. The couple paid this, yet still did not receive the

canceled note. When they complained again they received a Notice of Default and trustee sale. This couple and other witnesses with similar experiences with MGC are available to testify.

I have personally spoken with a person willing to testify and present evidence in the form of a memo between a Texas State official and an attorney in the employ of D. Andrew Beal regarding complaints made by consumers against MGC. The memo is a threat made to the Texas official regarding disclosure of certain incriminating information about MGC. This witness also has printed confirmation of a consumer's wire transfer for nearly $200,000 made payable to Homecomings Financial Network, Inc. that was deposited into a personal account for Stephen Costas, a senior executive officer for many of Beal's companies and corporations. This person fears his/her life will be in jeopardy if his/her name is disclosed.

Collectively with other MGC/LNV victims, some with open cases in State and Federal courts, I have investigated these companies and their ultimate parent corporation Beal Bank, and its sole owner, D. Andrew Beal. We have amassed a collection of documentary evidence that we are prepared to present to this court to prove my RICO claims against these defendants. Other victims are willing and able to testify as to their knowledge of MGC's fraudulent business practices and their RICO conspiracy to defraud me and other homeowners of our real property. Some of these victims gave me permission to use their documentary evidence as exhibits to my Objection to MGC's Motion to Dismiss so as to conclusively show this court that evidence does in fact exist to prove my RICO claims.

My direct financial losses exceed $4,000,000. Loss of income and future income accounts for more than half of this estimate; but also included is the increased cost of insurance and interest expenses due to unlawful credit damage; out-of-pocket medical costs above what health insurance would have cost prior to the defendants' bad acts; cost of future medical care; attorney fees paid prior to my becoming impoverished by my inability to work; loss in property value etc. Not included in this estimate is the cost of personal injury and emotional duress caused by the Defendants unlawful actions. I have no idea how to place a monetary value on the horrific physical pain and suffering I have had to endure since 2006, but there are professionals who can make such a determination; and this is a matter for discovery. This entire mess could have been avoided if any one of these Defendants had conducted their businesses in an honest and ethical manner and addressed my complaints about misappropriated payments back in 2005 and again in 2008 and 2010; this did not happen because they made more money from defaults and foreclosures. I never was in default; the evidence will prove this fact. These Defendants have destroyed my life for their own unjust financial gain.

These Defendants have caused me to suffer significant losses and by law I am entitled to compensation for loss or injury. Considering the Defendants egregious lack of concern for the human suffering they cause through their fraud and their "above the law" attitude I believe punitive damages should also be awarded. Furthermore, these Defendants have unjustly enriched themselves through a RICO conspiracy to defraud me and others; these wrongs create an obligation for them to make restitution to their victims.

I have evidence to prove my claims stated in my Amended Complaint. I can present witnesses to the court, including expert witnesses, who can testify as to their knowledge of facts material to my complaint and to the culpability of the named Defendants, including MGC. I believe my rights to due process under the Fifth and Fourteenth Amendments of our Constitution would be denied if MGC's Motion to dismiss were granted.

Denise Subramaniam