IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**DENISE SUBRAMANIAM**, *pro se*,

        Plaintiff,

    v.

**D. ANDREW BEAL, et al.**,

        Defendants.

No. 3:12-cv-01681-MO

OPINION AND ORDER

**MOSMAN, J.**,

    In her first amended complaint [20], *pro se* plaintiff Denise Subramaniam alleges a variety of claims centered around the mortgaging and threatened foreclosure of her home. Previously, I appointed pro bono counsel [14] for the purpose of assisting Ms. Subramaniam in drafting an amended complaint [20]. Now, defendants Northwest Trustee Services, Inc. [31], , MGC Mortgage [66], Ally Financial [105], Litton Loan Servicing LP [120], and Phil Gramm

[127] move to dismiss Ms. Subramaniam's amended complaint [20].  For the reasons explained below, I dismiss with prejudice all of Ms. Subramaniam's claims against all defendants.[1]

**BACKGROUND**

On February 9, 2004, Ms. Subramaniam obtained a home mortgage from People's Choice Home Loan, Inc. ("People's Choice").  The loan has since been transferred three times.  In 2007, after the first assignment of the note and Deed of Trust by People's Choice to Homecomings Financial Network, Inc., People's Choice filed for bankruptcy protection and was ultimately liquidated.  *See In re People's Choice Home Loan, Inc.*, Case No. 07-10765, United States Bankruptcy Court, Central District of California (Santa Ana).  People's Choice is not a defendant in this case.  The loan and Deed of Trust are currently held by LNV Corporation. (Req. Jud. Notice [67], Ex. D.)

LNV commenced foreclosure by trustee's sale in 2012.  On May 20, 2012, Ms. Subramaniam received a notice of trustee's sale, posted at her home.  However, the trustee's sale was canceled on September 27, 2012, and Ms. Subramaniam remains in possession of her home. (Req. Jud. Notice [76].)

Ms. Subramaniam's allegations appear to stem from the threatened foreclosure and from the transfers of her loan.  She alleges the following general claims:  "fraudulent foreclosure" and resulting emotional and physical damage; fraud and mail fraud; conspiracy; breach of contract; violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

---

[1] Defendants Homecomings Financial Network and Residential Funding LLC filed a Notice of Bankruptcy and Suggestion of Automatic Stay [53], which this court construes as a motion to stay [71].  Because I dismiss all claims as to all defendants, I deny as moot the motion to stay [53].

§ 1962; and discrimination in violation of the Federal Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691.[2]  I discuss each in turn.

## LEGAL STANDARDS

When reviewing a motion to dismiss, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  The court construes *pro se* pleadings "liberally," affording *pro se* plaintiffs the "benefit of any doubt."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  However, this liberal interpretation of a *pro se* complaint "may not supply essential elements of the claim that were not initially pled."  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  A court need not accept legal conclusions as true because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When a *pro se* plaintiff has been given a chance to amend her complaint, the court has appointed an attorney to assist with the process, and she still fails to state a sufficient or coherent claim, her claim may be dismissed with prejudice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had given a *pro se* plaintiff two opportunities to amend his deficient complaint and guidance to help him do so).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading that offers only "labels and

---

[2] Ms. Subramaniam also complains that, as a *pro se* plaintiff, she is at a significant disadvantage and has thus been deprived of due process in violation of her constitutional rights.  However, there is no right to pro bono counsel for a plaintiff bringing a civil action.  Even so, Ms. Subramaniam was provided with court-appointed pro bono counsel to assist in drafting her amended complaint [20], and she still failed to state the necessary elements of cognizable claims.

conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). While the plaintiff does not need to make "detailed factual allegations"at the pleading stage, the allegations must be sufficiently specific to give the defendant "fair notice" of the claim and the grounds on which it rests. See *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam) (citing *Twombly*, 550 U.S. at 555).

This court must determine whether it may exert personal jurisdiction over defendant Phil Gramm. The plaintiff bears the burden of demonstrating that personal jurisdiction over each defendant is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Oregon's long-arm statute extends jurisdiction to the outer limits of the state and federal constitutions. *See* Or. R. Civ. Pro. 4(L); *State ex rel. Western Seed Production Corp. v. Campbell*, 250 Or. 262, 271, 442 P.2d 215, 219 (1968). In order to exercise personal jurisdiction over an out-of-state defendant, it must be shown that the defendant has sufficient "minimum contacts" with the forum state that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted). Personal jurisdiction can be either general or specific. General jurisdiction is constitutionally permissible only if the defendant has engaged in "continuous and systematic" contacts with the forum state. *See Schwarzenegger*, 374 F.3d at 801 (internal citations omitted). Specific jurisdiction is proper where the out-of-state defendant (1) has purposefully directed his activities at the forum state; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *See id.* at 802.

As to plaintiff's claim of wrongful foreclosure, the case or controversy requirement of the United States Constitution deprives federal courts of jurisdiction to hear moot cases. *Iron Arrow*

*Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).  A case is moot when it "has lost its character as

a present, live controversy" and no effective relief can be granted.  *United States v. Geophysical*

*Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984).  Mootness is a question of subject matter

jurisdiction that courts must consider under Federal Rule of Civil Procedure 12(b)(1).  *White v.*

*Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

## DISCUSSION

### I.    This Court Lacks Personal Jurisdiction over Former Senator Gramm

There is no indication that former Senator Phil Gramm, who served from 1985–2002 as a

United States Senator from the state of Texas, has such continuous and systematic contacts with

the state of Oregon that he is subject to general jurisdiction therein.  The amended complaint [20]

alleges no instances in which Senator Gramm purposefully directed activities at the state of

Oregon, and there is no suggestion that this suit arises from any such activities.  In fact, the only

allegations against Senator Gramm pertain to his legislative activities as a United States Senator

from Texas; as such, Senator Gramm would be absolutely immune from liability under the

Speech or Debate Clause of the Constitution.  U.S. Const. Art. I § 6.  These activities are not

sufficiently related to the state of Oregon to allow for the exercise of specific jurisdiction over

Senator Gramm.

I need not decide, or even address, the question of immunity, as this court lacks personal

jurisdiction over Senator Gramm.  I dismiss all claims against him with prejudice.  Defendant

Senator Gramm's motion to dismiss [127] is GRANTED.

### II.    The "Fraudulent Foreclosure" Claim is Moot.

I interpret Ms. Subramaniam's claim of "fraudulent foreclosure" as one for wrongful

foreclosure.  Oregon recognizes a cause of action for the wrongful foreclosure of a trust deed.

ORS 86.735.  However, this cause of action lies only where the foreclosure has actually occurred.  *See Tabb v. One West Bank*, No. 3:10-855, 2011 WL 4448752 at *9 (D. Or. Aug. 26, 2011); *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188, 1204 n. 5 (D. Or. 2002).  Ms. Subramaniam's claim for wrongful foreclosure is moot because her house was not foreclosed upon.  (Req. Jud. Notice [76].).  Because no foreclosure occurred, there is no controversy about whether it was fraudulent or wrongful, and the court cannot provide any relief.  Oregon does not recognize a cause of action for wrongful attempted foreclosure, *see Hulse*, 195 F. Supp. 2d at 1204 n.5, so Ms. Subramaniam's allegation that a potentially wrongful foreclosure was threatened or attempted does not give rise to a cause of action.

### III.   The Amended Complaint [20] Fails to State a Claim for Intentional Infliction of Emotional Distress or Personal Injury Stemming from the Threatened Foreclosure.

Ms. Subramaniam alleges that she suffered emotional and physical damages from the threatened foreclosure.  As there is no cause of action for wrongful *attempted* foreclosure in Oregon, and no foreclosure has occurred, Ms. Subramaniam cannot recover for these alleged damages under a wrongful foreclosure theory.  *See id.*  Construed liberally, however, Ms. Subramaniam's claim may be one for intentional infliction of emotional distress ("IIED").  To prevail on an intentional infliction of emotional distress ("IIED") claim under Oregon law, a plaintiff must prove that: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's actions caused the plaintiff severe emotional distress, and (3) the defendant's actions transgressed the bounds of socially tolerable conduct." *Schiele v. Montes*, 231 Or. App. 43, 48, 218 P.3d 141, 144 (2009).  Under Oregon law, "[l]iability [for IIED] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d

730, 736 (2008) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).  Whether the

defendant's conduct "may reasonably be regarded as so extreme and outrageous as to permit

recovery" is a question for the court.  *Id.*

     Ms. Subramaniam has not alleged specific facts that support each element of an IIED

claim.  She has not shown an intent on the part of any of the numerous defendants to inflict

emotional distress, nor has she alleged conduct that is "outrageous" and "beyond all possible

bounds of decency."  *Id*. (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).  Posting a

notice of foreclosure on a home on which the holder reasonably believes the mortgage is in

default is not an outrageous action, but a normal step in the foreclosure process.  Although Ms.

Subramaniam was naturally distressed to learn that her home might be foreclosed on, that does

not give rise to a claim for IIED.

     Ms. Subramaniam also alleges that she has suffered "personal injury, including but not

limited to injury to her health."  (Amend. Compl. [20] at 7.)  However, she supports this

statement with a discussion of her multiple chemical sensitivity disorder.  She alleges that her

home accommodates her disability and "is the only safe environment for her."  *Id.*  Ms.

Subramaniam's personal injury claim is moot because the foreclosure did not occur and Ms.

Subramaniam is still in possession of her home.  Any injury that Ms. Subramaniam would have

suffered had her home been foreclosed upon is purely speculative.

## IV.    The Amended Complaint [20] Fails to State a Claim for Fraud or Mail Fraud.

     Ms. Subramaniam makes broad allegations of fraud and mail fraud related to her loan

documents and the threatened foreclosure.  Federal Rule of Civil Procedure 9(b) requires that a

party plead the circumstances constituting fraud "with particularity."  The plaintiff must identify

"the times, dates, places, benefits received, and other details of the alleged fraudulent activity" so

that the defendant has sufficient notice of the "particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge." *Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir. 1993) (internal quotations omitted). Moreover, in a suit against multiple defendants, a plaintiff must identify each defendant's role in the alleged fraudulent scheme. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

To state a claim for fraud under Oregon law, the complaint must allege the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; (9) and [the hearer's] consequent and proximate injury.

*Merten v. Portland Gen. Elec. Co.*, 234 Or. App. 407, 416, 228 P.3d 623, 629 (2010) (alternation in original).

Plaintiff arguably pleads the necessary elements with sufficient particularity as to People's Choice. She alleges that People's Choice switched out the pages in the loan documents she signed and misused blank signature pages in order to make it seem as if plaintiff had agreed to terms she had not. (Am. Compl. [20] at 13.) Of course, People's Choice is not a defendant in this suit, and so no fraud claim is supported by these allegations.

Ms. Subramaniam has failed to plead the necessary elements of fraud with particularity as to any of the other defendants. She alleges that the original holder of her mortgage did not have authority to transfer it, that the current holder of the mortgage does not have authority to foreclose, that securitization of her loan had caused it to be paid off,[3] and that defendants forged

---

[3] Ms. Subramaniam's contention that securitization of her mortgage somehow paid off the loan is incorrect and based on a mistaken understanding of the process. "[S]ecuritization of the loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust. . . . [it] merely creates a

and falsified signatures on mortgage-related documents which were later used in non-judicial foreclosure proceedings. She alleges that defendants made false statements of material fact knowing that she would rely on them, and that she did so, resulting in damages and personal injury. These allegations are conclusory and fail to allege any specifics of the allegedly fraudulent conduct. Further, plaintiff does not indicate which defendant made the allegedly false statements and what the content of the statements might have been. She also does not indicate what damages or personal injury she has suffered as a result or how defendants' actions were the cause of her injuries.

Although Ms. Subramaniam alleges some of the elements required for a fraud claim, her pleading does not meet the particularity requirement of Fed. R. Civ. P. 9(b). Her vague and general statements are the type of "'naked assertion[s]' devoid of 'further factual enhancement'" which do not suffice to state a claim under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Therefore, Ms. Subramaniam's fraud claim must be dismissed.

Ms. Subramaniam also makes allegations of mail fraud. To state a claim for mail fraud, a plaintiff must allege that "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (internal quotations omitted). Like a claim for fraud, a mail fraud claim must be pled with particularity. *See* Fed. R. Civ. P. 9(b). Here, Ms. Subramaniam's allegations lack particularity. Along with the vague fraud allegations discussed above, she alleges "use of the mails." There is no allegation that use of the mails was connected to any scheme of fraud among the defendants, nor, as noted above, is any

separate contract, distinct from Plaintiff's debt obligations." *Logvinov v. Wells Fargo Bank*, No. 11-04772, 2011 WL 6140995 at *3 (N.D. Cal. Dec. 9, 2011) (internal citations omitted).

such scheme properly pled.  Ms. Subramaniam's conclusory allegations that deeds of trust sent

by defendants through the mails were "false and fraudulent" are insufficient to satisfy Rule 9(b).

Ms. Subramaniam has failed to state a claim for mail fraud, and her claim must be dismissed

under Rule 12(b)(6).

## V.     The Amended Complaint [20] Fails to State a Claim for Conspiracy.

Ms. Subramaniam alleges that defendants conspired to defraud her.  "A civil conspiracy

consists of (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds

on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a result

of the overt act or acts."  *Morasch v. Hood*, 232 Or. App. 392, 402, 222 P.3d 1125, 1131–32

(2009).  A civil conspiracy is not "a separate tort for which damages may be recovered; rather, it

is a way in which a person may become jointly liable for another's tortious conduct."  *Id.* at 1132

(quotation omitted).  Here, Ms. Subramaniam has completely failed to allege the elements of a

civil conspiracy, and I found above that she has failed to state a claim for any underlying fraud.

Therefore, her claim that defendants conspired to defraud her must be dismissed.

## VI.     The Amended Complaint [20] Fails to State a Claim for Breach of Contract.

Ms. Subramaniam alleges that defendants breached the terms of her mortgage contract.

(Am. Compl. [20] at 26.)  A sufficient breach of contract claim must allege facts that

demonstrate Ms. Subramaniam and the defendants entered into a contract, the terms of that

contract, which terms the defendants failed to honor (causing the breach of the contract), and the

damages Ms. Subramaniam suffered because of that breach.  *See Slover v. State Bd. of Clinical*

*Social Workers*, 144 Or. App. 565, 570, 927 P.2d 1098, 1101 (1996) (discussing the pleading

standards for a breach of contract claim in Oregon).

Although she fails to so allege, it is undisputed that Ms. Subramaniam entered into a mortgage contract and Deed of Trust with People's Choice, the lender.  People's Choice, however, is not named as a defendant in this suit.  Nothing in the amended complaint [20] indicates that Ms. Subramanian is or has ever been in a contractual relationship with any other defendant.  (It seems likely that the successors in interest of People's Choice would have assumed the duties of plaintiff's original contract, but this is not pled and no claims are asserted against the successive holders of the note and Deed of Trust for breach of contract.)

While most of plaintiff's allegations of breach of contract are contradicted by the record, there are two which would state a claim for relief if asserted against a proper defendant. Plaintiff's allegation of breach based on her interest rate having been raised above the allowable 12.990%[4] and for breach of the implied obligation of good faith and fair dealing could be sufficient to support a claim.  (Am. Compl. [20] at 26, 27–28.)  However, these allegations were not asserted against any defendant in contractual privity with plaintiff.

The allegations involving the loan's interest rate are made against defendant Litton, a loan servicer that serviced plaintiff's loan at one time.  (Am. Compl. [20] at 26.)  However, it is not alleged, and it does not appear, that Ms. Subramaniam ever entered into a contract with Litton.  Thus, no breach of contract claim can lie against Litton.

Plaintiff also could state a claim for breach of the implied covenant of good faith and fair dealing implied in every Oregon contract had she named parties with whom she has been in contractual privity.[5]  Count V, in which all such allegations are found, names several defendants

---

[4] The Adjustable Rate Rider to the DOT clearly states that the variable interest rate "will never be greater than 12.990%." (Req. Jud. Notice [67], Ex. A at 18.)  Thus, if proved, Ms. Subramaniam's allegation that the interest rate was raised to over sixteen percent could support a claim for breach of contract.

[5] A duty of good faith and fair dealing is implied in every contract in Oregon.  *Klamath Off-Project Water Users. Inc. v. Pacificorp*, 237 Or. App. 434, 445, 240 P.3d 94, 101 (2010).  Claims for

*not including* any holder of the Note and Deed of Trust other than People's Choice. Plaintiff's specific allegations name only GMAC, Litton, EMC, and People's Choice (who has, again, not been served as a defendant in this case). Plaintiff does not allege that she was in a contractual relationship with GMAC, Litton, or EMC, all of which were at one time the servicers for her loan. It appears that no contract existed between plaintiff and these parties, although each of these defendants performed loan servicing (presumably pursuant to contracts with the successive holders of plaintiff's loan). Because there is no underlying contract, plaintiff's claims for breach of contract in Count V of the amended complaint [20] are dismissed with prejudice.

## VII.   The Amended Complaint [20] Fails to State a Claim for RESPA Violations.

Ms. Subramaniam alleges that defendant MGC violated the Real Estate Settlement Procedures Act ("RESPA") when it failed to respond to her written requests within sixty days. (Am. Compl. [20] at 27.) She also alleges that, in violation of RESPA's notice requirements, defendant Litton failed to give her written notice when it assigned the servicing of the loan to another servicer. *Id.* at 26. While Ms. Subramaniam may have pled that she sent a qualified written request ("QWR"), she has failed to plead actual damages, and thus her RESPA claims must be dismissed.

---

breach of the contractual duty of good faith and fair dealing "may be pursued independently of a claim for breach of the express terms of the contract" and do not depend on a showing that the express provisions of the contract have been breached. *Id.* (quoting *McKenzie v. Pacific Health & life Ins. Co.*, 118 Or. App. 377, 381, 847 P.2d 879, 881 (1993). However, the duty cannot contradict express contractual terms. *Id.* (citing *Zygar v. Johnson*, 169 Or. App. 638, 645, 10 P.3d 326, 330 (2000)). The operation of the duty in any particular case focuses on the "agreed common purpose," or the reasonable expectations, of the parties. *Id.* (citing *Or. Univ. Sys. v. OPEU*, 185 Or. App. 506, 515, 60 P.3d 567, 572 (2002).

I find that plaintiff's allegations concerning defendants' failure to "record [her] payments and apply them accurately to the loan's balance" could be sufficient to state a claim for breach of this duty, albeit only against parties with whom plaintiff was actually in a contractual relationship. (Am. Compl. [20] at 27.) A borrower can reasonably expect that payments on their loan will be properly recorded and credited. Plaintiff is not required to prove that defendant failed to do so in order to survive a motion to dismiss—she must only state a plausible claim for relief.

Plaintiff has sufficiently alleged that defendant Litton committed a violation of RESPA. 12 U.S.C. § 2605(b) requires a loan servicer to provide notice to the borrower when the servicing of the loan is "assigned, sold, or otherwise transferred." In most cases, this notice must be given at least fifteen days prior to the sale or assignment. 12 U.S.C. § 2605(b)(2)(A). Plaintiff has alleged that Litton never provided such written notice, and Litton does not dispute that it was the servicer of plaintiff's loan "for some period of time" but does not do so now. (Litton's Mem. [120-1] at 3.) This establishes, for purposes of a motion to dismiss, that Litton failed to give the required notice when it transferred the servicing of the loan. This allegation is sufficient to support a claim that Litton violated RESPA.

RESPA also requires that a loan servicer respond to a QWR from a borrower within sixty days of receiving the request. 12 U.S.C. § 2605(e). A QWR is a request that (1) includes sufficient information to allow the servicer to identify the name and account of the borrower, and (2) states the reasons for the borrower's belief that the account is in error with sufficient detail or provides such detail about other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B). While plaintiff's allegations of RESPA violations are not detailed, she does allege that she sent defendant MGC and defendant Northwest Trustee Services QWRs and that the requests identified her concerns about misapplication of payments she had previously made. (Am. Compl. [20] at 6, 27.) Further, I have examined a copy of one of the letters sent by plaintiff's former counsel to defendant MGC. ( Pl's Opp. [88], Ex. L.) This letter sufficiently identifies the loan and specifically requests "a payment history on this loan" because of Ms. Subramaniam's concern that "payments have not been properly credited."[6] Having examined this letter, which

---

[6] Defendant MGC disputes that it failed to respond to this letter. (Reply [110] at 8.) At this stage, however, I need not resolve this dispute of fact. Defendant MGC also argues that the RESPA claims against it are time-barred, *id.,* but I need not consider arguments raised only in a Reply brief, and choose not to do so at this time.

13 – OPINION AND ORDER

makes up for some defects in her pleading, I conclude that under the liberal interpretation I must give to a *pro se* complaint Ms. Subramaniam has sufficiently alleged that at least defendant MGC, if not defendant Northwest Trustee Services, violated RESPA in failing to respond to Qualified Written Requests for information.[7]

However, I find that plaintiff has failed to plead actual damages from the aforementioned violations of RESPA, and thus her claims must be dismissed. Failure to comply with RESPA does not create fraud or tort liability. Instead, the borrower can recover actual damages to the borrower and additional damages (up to $2000) that the court finds necessary to remedy a pattern of noncompliance by the defendant. 12 U.S.C. § 2605(f). Courts have interpreted the requirement of actual damages to mean pecuniary damages. *See, e.g.*, *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010); *Copeland v. Lehman Bros. Bank, FSB*, No. 09-1774, 2010 WL 2817173 at *3–4 (S.D. Cal. July 15, 2010). Conclusory allegations of damages will not suffice. *See, e.g.*, *Durland v. Fieldstone Mortgage co.*, 2010 WL 3489324 at *4 (S.D. Cal., Sept. 3, 2010). In order to recover for damages under RESPA, plaintiff must show that the damages claimed proximately resulted from the RESPA violation itself—here, the failure to give notice of the transfer or to promptly respond to a QWR—as opposed to other actions by the defendants. *See id*.

Even liberally construed Ms. Subramaniam's amended complaint [20] fails to allege actual damages that she suffered as a result of the alleged RESPA violations. Ms. Subramaniam has said that she suffered damages, but has not indicated how the alleged damages relate to the claimed RESPA violation or what the amount of those damages may be. The only factual

---

[7] In most cases, I would likely require a party to plead the necessary elements of a QWR in more detail in order to support this claim. However, because plaintiff is proceeding *pro se*, I construe her complaint liberally. I find that she has met her burden of alleging that at least one letter sent to defendant MGC met the required characteristics of a QWR.

allegations of damages relate to speculative future damage to her health that may occur if she is removed from her home, which has not happened. (Am. Compl. [20] at 7.) The bare conclusion that plaintiff "has suffered personal injury" as "a direct and proximate result of the actions and course of conduct of these Defendants" is not enough to show actual damages. *Id.*

Ms. Subramaniam has also not alleged a pattern or practice of noncompliance such that statutory damages are appropriate under 12 U.S.C. § 2605(f)(1)(B). *See Lal*, 680 F. Supp. 2d at 1223. She states that she "was in contact with several other consumers who experienced problems with MGC" and that "[f]rom March 2009 until May 2010 MCG [sic] did not respond to any customer mail and they were unable to be reached via phone numbers provided to their customers." (Amend. Compl. [20] at 27.) As Ms. Subramaniam does not allege that any of these consumers were not informed of a change in the servicing of their loans or that the defendants failed to respond to any QWR they sent, she has not alleged a pattern of practice of noncompliance. Without a showing that defendants violated RESPA in their dealings with any other consumers, it is impossible to identify a pattern of noncompliance. Thus, statutory damages are not supported by the amended complaint [20].

Although Ms. Subramaniam has adequately pled (for a *pro se* complaint) violations of RESPA by defendants Litton, MGC, and Northwest Trustee Services, she has not pled any actual damages suffered as a result of these RESPA violations. Consequently, her claims of RESPA violations are dismissed with prejudice as to all defendants.

## VIII.    **The Amended Complaint [20] Fails to State a Claim for RICO Violations.**

Ms. Subramaniam also alleges violations of RICO. To successfully plead a RICO claim, the plaintiff must allege that each individual defendant engaged in a pattern of racketeering activity. To establish a pattern of racketeering activity, the plaintiff must make a showing of at

least two related predicate acts that amount to a threat of continued criminal activity.  *See H.J.*
*Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Clark v. Time Warner Cable*, 523 F.3d 1110,
1116 (9th Cir. 2008).  The predicate acts must be pled with particularity under Rule 9(b).
*Edwards v. Marin Park Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004).

Although the Amended complaint [20] uses the term "predicate acts," (Amend. Compl.
[20] at 37), Ms. Subramaniam fails to specify what these acts are or to plead them with
particularity.  As discussed above, she fails to state the "time, place, and manner of each fraud
plus the role of each defendant in each scheme."  *Moore v. Kayport Package Express, Inc.*, 885
F.2d 531, 541 (9th Cir. 1989) (internal quotation omitted).  I dismiss Ms. Subramaniam's RICO
claims against all defendants for failure to state a claim.

## IX.    The Amended Complaint [20] Fails to State a Claim for Discrimination.

Ms. Subramaniam alleges that she was discriminated against in violation of the FHA and
ECOA because "she was deliberately and fraudulently deceived into a subprime mortgage when
her credit score was sufficiently high enough to qualify for a prime loan," and she "faced a
greater risk of default and foreclosure" because the defendants' "loan pools disproportionately
impacted minorities, female head-of-households, and disabled and seniors over the age of 50."
(Amend. Compl. [20] at 39–43.)  The FHA makes it unlawful for an entity engaged in the
"making and purchasing of loans or providing other financial assistance . . . secured by
residential real estate" to discriminate against any person "because of race, color, religion, sex,
handicap, familial status, or national origin."  42 U.S.C. § 3605.  ECOA makes it unlawful for a
creditor to discriminate against an applicant for credit "on the basis of race, color, religion,
national origin, sex or marital status, or age (provided the applicant has the capacity to
contract)."  15 U.S.C. § 1691.

Ms. Subramaniam attempts to set out a claim for violation of the FHA and ECOA based on a disparate impact theory. Disparate impact claims under the FHA and ECOA have been allowed in the Ninth Circuit. *See Pfaff v. U.S. Dep't. of Housing and Urban Dev.*, 88 F.3d 739, 745–46 (9th Cir. 1996); *Miller v. Am. Exp. Co.*, 688 F.2d 1235, 1239–40 (9th Cir. 1982). In order to state a claim for violation of the FHA and ECOA under a disparate impact theory, the plaintiff must point to an outwardly neutral policy or practice that has a significant adverse or disproportionate impact on members of the minority group. *Pottenger v. Potlatch Corp.* 329 F.3d 740, 749 (9th Cir. 2003) (setting out the standard for a disparate impact claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*); *Pfaff*, 88 F.3d at 746 (setting out the standard for a disparate impact claim under the FHA). The plaintiff must point to a "specific business practice" that resulted in the alleged disparate impact. *Pottenger*, 329 F.3d at 749.

Ms. Subramaniam's most specific factual allegation is that she was issued a subprime loan despite having a high enough credit score that she was qualified for better loan terms. (Am. Compl. [20] at 42.) This allegation, however, logically can only lie against People's Choice, which is not a defendant in this case. Ms. Subramaniam cannot support a claim against any other defendant on this allegation, as the complaint states that only People's Choice was involved in negotiating the loan terms.

Ms. Subramaniam comes closest to identifying an actionable specific business practice where she alleges that People's Choice was incentivized to issue a greater number of loans on subprime terms by the possibility of fees for the securitization of these loans from defendant Bear Stearns, and that this led People's Choice to issue her a subprime loan despite her "sufficiently high" credit score. (Am. Compl. [20] at 42–43.) I do not find these allegations sufficiently specific to give defendant Bear Stearns fair notice of the basis of the claim. Even

assuming *arguendo* that pointing to the sometime business relationship between defendant Bear Stearns and People's Choice is a specific enough identification of the challenged business practice to give notice, these allegations are still insufficient to meet the requirement of plausibility under *Twombly*. The allegations do not show how defendant Bear Stearns' payment of fees for the securitization of home mortgages is causally linked to People's Choice's lending decisions.

Furthermore, Ms. Subramaniam has not pointed to any facts showing that minority groups were actually disproportionately impacted by defendant Bear Stearns' payment of fees for securitization. The bare declaration that People's Choice's lending "disproportionally impacted minorities, female head-of-households, the disabled[,] and seniors over the age of 50" is insufficient to support a claim of disparate impact. (Am. Compl. [20] at 42–43.) The amended complaint [20] sets out no causal link between Bear Stearns' willingness to securitize loans issued by People's Choice and any effect on these protected groups.

Even if I were to find that Ms. Subramaniam has adequately stated a claim for unlawful discrimination, her claims would be barred by the applicable statutes of limitations. Any claim under the FHA must be brought within two years of the allegedly discriminatory acts. 42 U.S.C. § 3613(a)(1)(A). The statute of limitations for claims under ECOA was recently extended from two years to five years by the Dodd-Frank Wall Street Reform and Consumer Protection Act. *See* 15 U.S.C. § 1691e(f), as amended by Act of July 21, 2010, Pub. L. No. 111-203 § 1085(7), 124 Stat. 1376, 2085. Here, the underlying acts occurred when Ms. Subramaniam originally took out the loan in 2004.[8] (Am. Compl. [20] at 14.) As this lawsuit was not filed until September 2012, any claims are time-barred by the statutes of limitations.[9]

---

[8] The Supreme Court has "stressed the need to identify with care the specific discriminatory practice that is at issue." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 624 (2007), *result*

Cognizant of my duty to liberally construe a pro se complaint, I have considered whether Ms. Subramaniam might, if given leave to amend, be able to state a claim that is not time-barred through application of the continuing violation doctrine. I have concluded that Ms. Subramaniam's claims of unlawful discrimination in the issuance of her loan do not support application of that doctrine.

The Supreme Court held in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), that civil rights claims based on events occurring outside the limitations period may be brought under a continuing violation theory where the challenged practices extended into the limitations period. *Id.* at 380–81. The *Havens* plaintiffs had brought suit challenging the defendant's "racial steering" practice. *Id.* at 366–67. The Court considered two different types of claims brought by

---

*abrogated on other grounds*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5. In this case, plaintiff's FHA claims would arise under 42 U.S.C. § 3605(a), which penalizes discrimination "in the terms or conditions of [residential real estate-related transactions] because of race, color, religion, sex, handicap, familial status, or national origin." Plaintiff's claim under ECOA falls under 15 U.S.C. § 1691, which provides that "[it] shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—on the basis of [a protected characteristic]." Thus, plaintiff's claim of discrimination under both the FHA and ECO is discrimination in "the terms or conditions" or "any aspect," respectively, of a credit transaction. Here, the allegation must be that the terms and conditions of the loan were altered because of plaintiff's protected status. As such, I find that any violation occurred in the issuance of the loan and ceased occurring at the loan transaction's closing.

Other district courts, in the Ninth Circuit and elsewhere, have agreed with this conclusion. *See Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269 (S.D.N.Y. 2011) (holding that the challenged conduct concluded when the loan transaction closed and thus the limitations period began to run on the day of the closing); *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 875 (N.D. Cal. 2010) (dismissing an FHA claim where plaintiff's claim arose from unlawful conduct occurring at the time of the loan's origination, which occurred outside the limitations period); *Goodwin v. Exec. Tr. Services*, 680 F. Supp. 2d 1244, 1251 (D. Nev. 2010) (dismissing a claim as time-barred where the violation alleged was discriminatory issuance of a "less-than-favorable loan" and plaintiff had signed the deed of trust at issue more than two years before filing).

[9] Because Ms. Subramaniam's suit would be barred under either the two-year or the five-year statutes of limitations for ECOA, I need not decide whether the amended statute of limitations is retroactive such that it would apply to events occurring before the 2010 amendment. At least one other court, considering this question, has found that there is no evidence that Congress intended the amendment to be retroactive and thus applied the presumption that an amended statute of limitations applies only prospectively. *See Citgo Petroleum Corp. v. Bulk Petroleum Corp.*, No. 08-654, 2010 U.S. Dist. LEXIS 82277, at *8–9 n.4 (D. Okla. Aug. 12, 2010) (citing 54 C.J.S. *Limitations of Actions* § 15) (stating the presumption that amendments apply only prospectively absent manifest legislative intent that the amended statute of limitations apply retroactively).

19 – OPINION AND ORDER

individual plaintiffs under the FHA.  At issue were both "tester claims," or claims brought by

FHA testers for the violation of their right not to be given false housing information on the basis

of their protected status, *id.* at 373, and "neighborhood claims," or claims brought by the same

plaintiffs for the violation of their right to the benefits of a racially integrated neighborhood, *id.*

at 375.  The Court found that all of the neighborhood claims were part of a continuing violation

of this right, and thus allowed even the specific instances of racial steering that had occurred

outside the limitations period to go forward on that theory.  *Id.* at 381.  However, the Court

concluded that the tester claims based on events that occurred outside the limitations period were

time-barred, reasoning that the one-time receipt of false information could not reasonably be

linked to other instances of the same conduct.  *Id.*  Because each provision of information was

"one incident of conduct violative of the Act," the continuing violation doctrine did not apply.

*Id.*  The Court concluded that a deprivation of the right to truthful housing information occurs

only at the time untrue information is given; consequently, separate provision of untrue

information constitutes a separate violation of the act, not a continuing violation.  *Id.*

The Supreme Court has also clarified that discriminatory events occurring outside the

limitations period do not extend into that period merely because their effects are felt therein.  The

Court noted in *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977), that "[a] discriminatory act

which is not made the basis for a timely charge . . . is merely an unfortunate event in history

which has no present legal consequences."  *Id.* at 558.  The Ninth Circuit has subsequently

refined this doctrine, clarifying that the "continuing effects of a past violation" are not to be

treated as a continuing violation.  *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008).

*Garcia* involved challenges based on the defendant's failure to "design and construct" a building

in compliance with the American with Disabilities Act, in violation of the FHA.  *Id.* at 460.  The

Ninth Circuit held that this violation ends when the construction is completed.  *Id.* at 463.  The court concluded that the continued existence of the noncompliant building was simply an effect of the past violation, and thus the continuing violation doctrine did not apply.  *Id.* at 463.

The continuing violations doctrine has been held by some courts to allow challenges based on loans issued outside the limitations period where the allegedly discriminatory practice affected at least one of multiple plaintiffs' loan transaction within the limitations period.  *See Ramirez*, 633 F. Supp. 2d at 929; *Cherry v. D.B. Zwirn Special Opportunities Fund, L.P.*, No. 09-33, 2010 WL 415313, at *5 (M.D. Fla. January 27, 2010) (dismissing claim on other grounds).  However, others have reasoned that the issuance of individual loans is equivalent to the "tester claims" in *Havens*, which were held to be discrete violations.  *See Kimbrew*, 2008 U.S. Dist. LEXIS 108632, at *7–10.  I need not decide this question, however, as Ms. Subramaniam has pointed to no other specific instances of discriminatory loan issuance.  The cases above all involved multiple plaintiffs challenging the lender's allegedly discriminatory practice; here, Ms. Subramaniam links her claim to no other borrower similarly situated.  *See Davenport*, 725 F. Supp. 2d at 876.

The grant or denial of leave to amend is within this court's discretion.  See *Foman v. Davis*, 371 U.S. 178, 182 (1962).  All of plaintiff's possible claims are barred by the statutes of limitations because she entered into the challenged transaction in 2004, and I therefore find that amendment would be futile.  Ms. Subramaniam's claims are barred by the statute of limitations, and cannot be saved therefrom by the continuing violations doctrine. Consequently, I dismiss plaintiff's FHA and ECOA claims with prejudice.[10]

---

[10] Even if I were not dismissing these claims in full, they would be dismissed against all defendants other than defendants Bear Stearns, as plaintiff makes no allegations that any of the other defendants engaged in any discriminatory practices in violation of the FHA or ECOA.  Plaintiff's bare

**CONCLUSION**

I have already given Ms. Subramaniam one opportunity to amend her complaint with the assistance of appointed pro bono counsel. Despite this assistance, she has failed to allege the facts necessary to survive the defendants' motions to dismiss, even under the liberal construction I have applied to this *pro se* complaint. I therefore grant the defendants' respective motions to dismiss [31, 66, 105, 120, 127] and dismiss Ms. Subramaniam's complaint with prejudice as to all named and unnamed defendants.


IT IS SO ORDERED.

DATED this   27th   day of September, 2013.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

---

statement that defendant GMAC "has discriminated against plaintiff on the basis of her age and gender," (Am. Compl. [20] at 39), is supported by no underlying facts, and cannot support a claim against GMAC.