# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

FILED 2 DEC '14 15:38USDC-ORP

| | |
|---|---|
| **DENISE SUBRAMANIAM, pro per** | Civil Case No. **3:12 − CV − 1681 MO** |
| **Plaintiff,** | |
| v. | **MOTION FOR RELIEF OF** |
| **D. ANDREW BEAL et al** | **JUDGMENT UNDER RULE 60** |
| **Defendants** | |

## MOTION FOR RELIEF OF JUDGMENT UNDER RULE 60(b)

Here comes Plaintiff, Denise Subramaniam, self represented, and hereby motions this court for

relief under Federal Rule 60(b) (4) from its unconstitutional and VOID Order to dismiss with

prejudice against all defendants.  Furthermore the Order should also be vacated under Rule

60(b)(3) because it was based on fraud and fraud upon the court. The Order may be vacated for

any other reason that justifies relief under Rule 60(b)(6).

Timing is for this motion for Rule 60 relief is reasonable because under Rule 60(d)(3) this rule

does not limit a court's power to set aside a judgment for fraud on the court; at any time.

**A 1932 judgment was vacated in 1944 due to proof that fraud was perpetrated on the court**.

"The Circuit Court of Appeals is directed to set aside its 1932 judgment, recall its 1932 mandate,

dismiss Hartford's appeal, and to issue a mandate to the District Court directing it to set aside its

judgment entered pursuant to the 1932 mandate, to reinstate its original judgment denying relief

to Hartford, and to take such additional action as may be necessary and appropriate. *U.S.*

*Supreme Court, Hazel-Atlas Glass Co. v Hartford-Empire Co., 322 U.S. 238 (1944), No. 398,*

*Argued February 9, 10, 1944, Decided May 15, 1944, 322 U.S. 238* . "This case involves the power of a Circuit Court of Appeals, upon proof that fraud was perpetrated on it by a successful litigant, to vacate its own judgment entered at a prior term and direct vacation of a District Court's decree entered pursuant to the Circuit Court of Appeals' mandate."

"A default judgment is not presumed to be final." In re *Burlington Coat Factory Warehouse of McAllen, Inc., 167 S.W. 3d 827, 829 (Tex. 2005) (orig. proceeding)*; *Houston Health Clubs, Inc. v. First Court of Appeals, 722 S.W.2d 692, 693 (Tex. 1986) (orig. proceeding) (per curiam)*. "When there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it (1) actually disposes of every pending claim and party, or (2) clearly and unequivocally states that it finally disposes of all claims and all parties." *Lehmann v. HarCon Corp., 39 S.W.3d 191, 205 (Tex. 2001)*.

None of my claims were disposed of by this court. Defendants Northwest Trustee Services, ("NWTS"), MGC Mortgage Inc. ("MGC") and Dovenmuehle Mortgage Inc. ("DMI") and LNV Corporation, ("LNV") are all debt collectors and they knowingly and willfully violated the Fair Debt Collection Practices Act ("FDCPA"). Not only did I immediately write a letter to NWTS disputing the debt after they posted a notice of trustee sale on my property; I have consistently disputed in writing owing any debt to any of these parties. NWTS failed to investigate the debt as they are required to do under the FDCPA. Whether or not the foreclosure sale was perfected I am entitled to relief of damages under the FDCPA.  This court deprived me of that relief.  This court denied me an opportunity to be heard at a conventional trial on the merits of my case. None of my claims were actually disposed of by this court; and no determination of fact or conclusion of law was provided in this court's Order to support its reasoning for its decision.

As a pro-se litigant I should have been given an opportunity to amend my complaint if it was procedurally lacking.

Quoting from *Haines v. Kerner - 404 U.S. 519 (1972)*:

> "...allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U. S. 41, 355 U. S. 45-46 (1957). See Dioguardi v. Durning, 139 F.2d 774 (CA2 1944)."

The court's Order was unconstitutional because it had the effect of depriving me of my liberty without due process in violation of my Fifth and Fourteenth Amendment rights.

## DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS

Plaintiff has been deprived of liberty to enjoy her property, to sell her property or to extract equity from her property to make necessary repairs on her property for more than ten years due to the willful misconduct and criminal acts perpetrated against her by the Defendants. She has been deprived of liberty to enjoy good health and to enjoy the benefits of her chosen profession and the income it once provided. She has been deprived of the liberty to enjoy the fruits of her many years of labor and the investment she made into her property so she could retire in comfort and enjoy the normal and worry free activities of a grandmother. She has been deprived of the liberty to enjoy her retirement plans to give back to the community and offer her services to non-profits and public interest causes.

"Although the Court has not assumed to define "liberty" with any great precision, that term is not confined to mere freedom from bodily restraint. Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a [347 U.S. 497, 500]   proper governmental objective." *BOLLING v. SHARPE, 347 U.S. 497 (1954) U.S. Supreme Court.*

*In R v Awang [2004] 2 Qd R 672*, Williams JA stated that the terms "confines", "detains", "deprives" and "liberty" should be given their ordinary and natural meaning. He stated that the most apposite meaning of "liberty" was "The condition of being able to act in any desired way without restraint; power to do as one likes". "Deprive" includes the denial of enjoyment of something and "detain" has a variety of meanings including "keep in confinement", "hold back, delay, stop". McMurdo P noted that a person may be deprived of their liberty not only against their will but also where the deprivation was achieved by fraud, done without knowledge or where the victim lacks capacity.

Justice Harlan, dissenting in *Poe v. Ullman, 455* observed that one view of due process, "ably and insistently argued . . . , sought to limit the provision to a guarantee of procedural fairness." But, he continued, due process "in the consistent view of this Court has ever been a broader concept ... Were due process merely a procedural safeguard it would fail to reach those situations where the deprivation of life, liberty or property was accomplished by legislation which by operating in the future could, given even the fairest possible procedure in application to individuals, nevertheless destroy the enjoyment of all three... Thus the guaranties of due process, though having their roots in Magna Carta's 'per legem terrae' and considered as procedural

safeguards 'against executive usurpation and tyranny,' have in this country 'become bulwarks also against arbitrary legislation.'"

"Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the Supreme Law of the Land. Having taken an oaths of office to support the Constitution of the United States any judge who has acts in violation of the Constitution is engaged in an act or acts of treason. If a judge does not fully comply with the Constitution, then his orders are void," *In re Sawyer, 124 U.S. 200 (1888)*, "he/she is without jurisdiction."

## FRAUD AND FRAUD UPON THE COURT

It is true that I contracted with People's Choice Home Loans ("PCHL") for a mortgage in February 2004 to refinance for better terms. Interest rates had dropped significantly since the time I had originally purchased my home and financed it with a mortgage through Norwest Mortgage. However, the PCHL mortgage contract is null and void and unenforceable for, but not limited to, the following reasons:

1. The contract originated from fraud in the factum. Unknown to me and know to the other parties of the contract, I was not actually contracting with PCHL. PLCH intentionally misrepresented itself as a Lender on the contract, when it was not a lender and it had no interest in performing the duties commonly expected of a lender; i.e fulfilling its obligations as a lender under the contract. PCHL was acting a "straw lender" and its misrepresentation of itself as a lender was willful with intent to deceive. This deceit in fact caused me great harm and financial loss.

Subramaniam v Beal et al

2. The other parties to the contract, intentionally hidden from me, were parties to a securitized trust, specifically the Bear Stearns BSABS 2004-HEA Trust. One of those parties was EMC Mortgage Inc. ("EMC") a subsidiary of Bear Stearns and the master servicer to the Trust, as well as the seller into the Trust, which was later purchased by Defendant JPMorgan Chase, its current parent corporation.

3. The closing of the mortgage contract with PCHL was continually delayed, by all appearances this was intentional because PCHL knew I was leaving for a six month business trip overseas. The closing had originally been scheduled two weeks before my departure. I told PCHL I was going to postpone my trip and they insisted there was no need, in the end the closing transpired on or about the day of my departure. This placed me into a position of duress and this was most likely intentional. I had insisted on a fixed rate and no prepayment penalty, terms consistent with prime loans. I qualified for and had been promised such prime terms and due to my equity position in my property (60%) and my credit score at the time of this loan. My origination documentation shows I was promised these terms and I entered into closing fully expecting that these were the terms of the contract. Unknown to me at the time, the financial incentive offered to entities like PCHL was to write loans with predatory terms that have become known as "sub-prime" loans. During the closing additional contract terms had been inserted within the bundle of documents I was asked to sign. The terms on the face of the contract were the terms I had been promised, however pages inserted into the middle of this bundle of documents contained different terms, highly predatory terms exactly opposite to the terms I had agreed to that included huge prepayment penalties and ARM interest rates; altogether the contract contained three separate sets of terms. A contract with multiple and conflicting

terms cannot be enforced. It is a nullity by its very nature and in this case the addition of such predatory terms was done willfully and intentionally and it resulted in horrific harm to me.

4. A few months after the closing of my mortgage which I had been willfully deceived into believing was financed by PCHL as a "lender" my insurance agent informed me, while I was overseas, that EMC (now owned by Defendant JPMorgan Chase) was giving him a difficult time with the process of proving I had home owners insurance. I had no idea how EMC was involved in my mortgage because I had just refinanced PCHL. Thus began my nightmare and the facts specific to this ordeal are included my pleadings.

5. In mid-2005 EMC (now owned by Defendant JPMorgan Chase) made a false claim of default against me after I told them I planned to refinance as some as the early pre-payment penalty date had passed. I disputed their claim of default because I was by my own records current on the loan. I requested a complete payment history from the inception of the loan. EMC failed to provide it. I applied for a mortgage with Bank of America and was turned down because EMC had been wrongfully reporting my payment history as being more than 90 days late almost from the inception of the loan. I began to phone EMC daily and they finally told me they had sold my loan to GMAC. GMAC however claimed in writing that they did not have my loan. The facts surrounding these occurrences are specified in my pleadings so I will not expound on them further here.

6. The deed of trust ("DOT") filed with my county does not match the deed of trust I retained after the closing of my mortgage with PCHL. It is obvious that pages are missing in the deed of trust filed with my county, and the language and format of this

Subramaniam v Beal et al

false document does not match the one I actually signed.  THEREFORE the deed of trust
is VOID and unenforceable.

7.  No assignment of DOT was ever made from PCHL to the BSABS 2004-HEA Trust or
any of its agents.  This breached the terms of the Trust's pooling and servicing
agreement.  The assignment of DOT filed in 2006 just prior to an attempt to foreclose on
my property by Defendant Litton Loan Servicing aka Ocwen purports to be assigning
beneficial rights from PCHL to GMAC-RFC.  This constitutes a clear and incurable
break in the chain of title. See the Declaration of William J. Paatalo.

8.  In 2006 I had hired an attorney and incurred legal fees to defend my property against a
wrongful foreclosure.  My attorney proved that I had never been in default in 2006 and
had in fact made each and every payment to EMC and Litton.  She further requested that
Defendant Litton call off the trustee sale, correct EMC's and Litton's inaccurate credit
reporting of my payment history so I could then refinance with a lender of my own
choice.  Litton refused to this because in their own words stated in writing "their client
had no incentive" to do so due to the equity I had built into my property (my home.)
Again documentary evident substantiating my claims is in my pleadings.

9.  The securitization audit done by William J. Paatalo, an expert witness for the Plaintiff, in
November 2012 also showed that I was not in default, and my loan was in fact showing
as current in the Bloomberg terminal when it was paid off in the BSABS 2004-HEA
Trust in December 2005, as well as prior to its being paid off in the Trust.  Screen shots
of this fact are included in my pleadings. This fact also substantiates my claims that EMC
(now owned by Defendant JPMorgan Chase) knew all along I was never in default and

that they willfully and knowing provided the credit reporting agencies with inaccurate

information about my payment history in violation of the Fair Credit Reporting Act,

("FCRA") which provides remedy for such willful violations to consumers like me. This

willful inaccurate reporting in fact did cause me significant harm and financial damage;

and it deprived me of my liberty without due process in violation of my constitutional

rights under the Fifth and Fourteenth Amendments.

10. Defendant Litton's refusal to correct their inaccurate credit reporting and to call off their

fraudulent trustee sale of my property specifically due to the high amount of equity I had

built into my property through years of investment could only be explained through the

deduction that they knew the title to my property was clouded; they knew I was never in

default on my mortgage; and that they knew they did not have standing to foreclose but

they proceeded to do so anyway as a means to cover up the fraud committed by them

perpetrated against me and others by Defendant Litton and some of the other Defendants

party to this claim. Defendant Litton's unconscionable refusal to call of the trustee sale

in 2006 caused me to file a bankruptcy to prevent them from fraudulently foreclosing and

stealing my equity, my investment. This caused me to suffer further damage to my credit

which in turn has deprived me of liberty without due process for ten long years.

Wrongful damage to my credit has not only caused me financial harm, it has caused me

to suffer personal injury; extreme mental anguish and physical pain because it barred me

from acquiring affordable health care insurance and forced me to wait months in

agonizing pain to receive treatments until I could save enough to pay for treatments and

tests with cash. Additionally damage to my credit caused me to suffer significant loss of

income and eventually denied me the liberty to enjoy the many years of hard work I

performed to enjoy the pursuits of my profession and the fruits of my labors in my

retirement years.

11. Since 2006 none of the parties attempting to foreclose on my property have had standing

to do so, these repeated attempts to foreclose on my property have cause me significant

emotional distress and have made me a virtual prisoner in my own home.

This court made no determinations as to any of these facts or claims in its Order to dismiss with

prejudice.

 "Due process of law implies the right of the person affected thereby to be present before the

tribunal which pronounces judgment upon the question of life, liberty, or property, in its most

comprehensive sense; to be heard, by testimony or otherwise, and to have the right of

controverting, by proof, every material fact which bears on the question of right in the matter

involved. If any question of fact or liability be conclusively presumed against him, this is not due

process of law". *Zeigler v. Railroad Co., 58 Ala. 599.*

"A judgment is not final merely because it states that it is final; it must actually dispose of all

parties and claims or demonstrate an unequivocal intent to dispose of all parties and claims." See

Lehmann v. HarCon Corp., 39 S.W.3d 191, 205 (Tex. 2001).

"A judge may not grant a Fed. R.Civ.P. 12(b)(6) motion to dismiss based on a 1 disbelief of a

complaint's factual allegations. Id. While this standard is decidedly liberal, it requires more than

the bare assertion of legal conclusions. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434,

436 (6th Cir.1988). "In practice, `a ... complaint must contain either direct or inferential

allegations respecting all the material elements to sustain a recovery under some viable legal

theory.'" Id. (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir.1984),

cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (quoting In re Plywood

Antitrust Litigation, 655 F.2d 627, 641 (5th Cir.1981)). Applying these standards, we hold that

the complaint withstands the motion to dismiss on both counts.... Given that a section 105(a)

injunction may issue against an action, in a non-appointing forum, that threatens the integrity of

the estate, the Trustee has clearly stated a claim upon which relief may be granted. The Trustee is

entitled to offer his proof supporting these allegations that the Weitzman Action would unduly

hinder the administration of the estate. The District Court erred in dismissing this claim for

failure to state a claim."

From Black's Law Dictionary: "In American law. A taking away; confiscation; as the deprivation

of a constitutional right. Thus a taking of property without due process of law; *Sundlun v. Zoning

Board of Review of City of Pawtucket, 50 R.I. 108, 145 A. 451, 454*; or of liberty. *Lynch v. City of

Muskogee, D.C.Okl., 47 F.Supp. 589, 592.* – "To take. The term has this meaning in a

constitutional provision that no person shall be „deprived of his property without due process of

law, and denotes a taking altogether, a seizure, a direct appropriation, dispossession of the

owner." *Brown v. City of Atlanta, 167 Ga. 416, 145 S.E. 855, 857.* "It connotes want of consent."

*Sandel v. State, 104 S.E. 567, 571, 115 S.C. 168, 13 A.L.R. 1268.*"

"Due process of law in each particular case means such an exercise of the powers of the

government as the settled maxims of law permit and sanction, and under such safeguards for the

protection of individual rights as those maxims prescribe for the class of cases to which the one

in question belongs." *Cooley, Const. Lim. 441.* - "Whatever difficulty may be experienced in

giving to those terms a definition which will embrace every permissible exertion of power

affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. They then mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the enforcement and protection of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution that is, by the law of its creation to pass upon the subject matter of the suit..." *Pennoyer v. Neff, 95 U.S. 733, 24 L.Ed. 565.*

"A void order is an order issued without jurisdiction by a judge and is void ab initio and does not have to be declared void by a judge to be void. Only an inspection of the record of the case showing that the judge was without jurisdiction or violated a person"s due process rights, or where fraud was involved in the attempted procurement of jurisdiction, is sufficient for an order to be void." Potenz Corp. v. Petrozzini, 170 Ill. App. 3d 617, 525 N.E. 2d 173, 175 (1988). "In instances herein, the law has stated that the orders are void ab initio and not voidable because they are already void." People ex. re. Brzica v. Village of Lake Barrington, 644 N.E.2d 66 (Ill.App.2 Dist. 1994).

"A void judgment which includes judgment entered by a court which lacks jurisdiction over the parties or the subject matter, or lacks inherent power to enter the particular judgment, or an order procured by fraud, can be attacked at any time, in any court, either directly or collaterally, provided that the party is properly before the court." See Long v. Shorebank Development Corp., 182 F.3d 548 (C.A. 7 Ill. 1999). In re Adoption of E.L., 733 N.E.2d 846, (Ill. APp. 1 Dist. 2000).

Under Federal law which is applicable to all states, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable,

but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." *Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828)*

"Res judicata consequences will not be applied to a void judgment which is one which, from its inception, is a complete nullity and without legal effect," *Allcock v. Allcock, 437 N.E.2d 392 (Ill.App.3 Dist. 1982).*

"A judgment is a void judgment if the court that rendered the judgment acted in a manner inconsistent with due process." *Klugh v. U.S., D.C.S.C., 610 F. Supp. 892, 901.*

Void judgments are open to challenge at any time. Future taxpayers will bear the financial burden when citizens similarly deprived of their property discover that their constitutional rights to due process were violated and that fraud upon the court was committed in the deprivation of their property and their liberty. These harmed parties will flood to the courts. Truth is always true, but falsehood is eventually discovered. It behooves this court to vacate its unconstitutional order as void now, rather than later.

## DEPRIVATION OF EQUAL PROTECTION OF THE LAWS AND VIOLATION OF PLAINTIFF'S PROTECTIONS AS DISABLED PERSON UNDER THE AMERICAN WITH DISABILIITES ACT

This court denied me my right to due process and equal protection of the law under the Fourteenth Amendment; and this court violated my protections under the Americans with Disabilities Act, ("ADA"), by twice denying my motion to file electronically. I framed my second motion requesting this ability as a request for special accommodation under the ADA.

On or around the time I filed this second motion for permission to file electronically I had been

suffering from a serious allergic type reaction that doctors ultimately determined were consistent

with my diagnosis of multiple chemical sensitively syndrome ("MCS") that not only caused

significant pain, it limited my mobility, caused significant cognitive dysfunction and rendered

me unable to function and confined to bed most of the time from its onset on or around May

2013 until November 2013. See Exhibit A – Photographs of some of my reactions suffered

during this time.

During this time I also was unable to receive my mail because my mail box which was unlock

able was on the street. I discovered my mail was regularly being taken from it by passersby. The

U.S. postal service held my mail for nearly two months (I was unable to collect it due to my

health) until I could afford to purchase a secure and lockable mailbox and have it installed. Then

once delivery began again I misplaced the key (again due to my health condition) so was unable

to retrieve mail delivered to me. Also during this time I phoned the court administrator assigned

to my case several times to let her know I did not have access to my mail, to find out what was

happening with my case and to get the dates of deadlines etc. She failed to return my calls.

I motioned the court for an extension of time (I think twice because my symptoms still have not

subsided by the time I had specified in my first motion for extension of time. One of these

motions for extension was handwritten and filed by a friend who happened to be near the

hospital at a time when I was there for tests and offered to pick it up and file it for me. I don't

have a copy (nor did I get one in the mail from the court.) When I was finally able to find the

key to my mailbox and retrieve the mail that had piled up in it, I discovered a letter from the

attorney for MGC stating the case had been dismissed with prejudice. I was devastated and had

already missed the time to file for an appeal. Some of the motions filed in my behalf by friends while I was too ill to leave my home had been filed AFTER the case was dismissed yet the person filing for me was NEVER informed of this fact.

Had I been given permission to file electronically none of this would have happened. I would have been able to keep up with my case from my own home, and I would have been able to participate. Instead this court's denial of permission for me to file electronically caused discriminatory disparate impact that in turn denied my constitutional right to due process.

FURTHERMORE, federal courts in some States, like Texas, allow all litigants (including pro-se litigants) to file electronically without asking the court's permission. In today's age of electronic and technological advances there is no reason this should not be the case across the country. Prohibiting pro-se litigants from filing electronically have a discriminatory disparate impact on them as a group because they are not notified about filings until days after opposing parties with attorneys who have immediate notification. This caused pro-se litigants to lose days of preparation time for responses when they are already disadvantaged because they don't have access to the legal databases attorneys have access to. Also it slows their ability to respond because they have to spend time painstakingly typing every reference they make to case citing and arguments in the opposing parties pleadings when they only have access to hard copies – while attorneys and the teams of paralegals at their disposal can simply cut and paste from the electronic files they receive from the electronic filing system.

Cammy Depew is a pro-se litigant who is the grandmother of five young grandchildren living with her. She cared for these young children daily making it exceptionally difficult for her to write court pleadings. She had finally understood the proper procedure in her State court and

LNV (a Defendant in my case and also a party to her case) removed her complaint against them to federal court knowing this would severely disadvantage her. She had no car and the federal court is nearly a two hour drive from her home. Twice she experienced dismissals with prejudice in the federal court. *Depew v. LNV Corporation, Case No. 14-284-SDD-RLB U.S. District Court Middle District of Louisiana*

As a result Cammy, her disabled daughter, her other daughters and her grandchildren have been unjustly deprived of their property and their liberty without due process. This is a miscarriage of justice that would never have happened had she had access to electronic filing. (Like me Cammy had significant equity in her property and she did not of her own accord default on her mortgage of which LNV claimed it was holder in due course based of mortgage assignments that contained forgeries, false signatures and other intentional false and misleading statements specific to the grantor/assignor and grantee/assignee.)

Discrimination.—"Unlike the Fourteenth Amendment, the Fifth contains no equal protection clause and it provides no guaranty against discriminatory legislation by Congress." *Detroit Bank v. United States, 317 U.S. 329, 337 (1943); Helvering v. Lerner Stores Corp., 314 U.S. 463, 468 (1941)*. At other times, however, the Court assumed that "discrimination, if gross enough, is equivalent to confiscation and subject under the Fifth Amendment to challenge and annulment." *Steward Machine Co. v. Davis, 301 U.S. 548, 585 (1937). See also Currin v. Wallace, 306 U.S. 1, 13-14 (1939).* The theory that was to prevail seems first to have been enunciated by Chief Justice Taft, who observed that the due process and equal protection clauses are "associated" and that "[i]t may be that they overlap, that a violation of one may involve at times the violation of the other, but the spheres of the protection they offer are not coterminous... [Due process] tends

to secure equality of law in the sense that it makes a required minimum of protection for every

one's right of life, liberty and property, which the Congress or the legislature may not withhold.

Our whole system of law is predicated on the general, fundamental principle of equality of

application of the law." *Truax v. Corrigan, 257 U.S. 312, 331 (1921). See also Hirabayashi v.*

*United States, 320 U.S. 81, 100 (1943)*. Thus, in *Bolling v. Sharpe, 347 U.S. 497, 499-500 (1954)*

a companion case to *Brown v. Board of Education, 347 U.S. 483 (1954)* the Court held that

segregation of pupils in the public schools of the District of Columbia violated the due process

clause. " ... But the concepts of equal protection and due process, both stemming from our

American ideal of fairness, are not mutually exclusive. The 'equal protection of the laws' is a

more explicit safeguard of prohibited unfairness than 'due process of law,' and, therefore, we do

not imply that the two are always interchangeable phrases. But, as this Court has recognized,

discrimination may be so unjustifiable as to be violative of due process."

## THREAT OF DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS, THREATS RELATALIATION, EXTORTION AND INTIMIDATION, THREATS TO CONSTITUTIONAL RIGHT TO FREE SPEECH

This court apparently believed my causes of action were moot because the parties attempting to

foreclose filed a recession of default.  Defendants LNV and MGC are both solely owned by

Defendant D. Andrew Beal.  Although Defendants LNV and DMI were properly served, neither

made an appearance with this court.  This is a pattern is one they have repeated in my cases with

other victims of their fraud conspiracy, abuse of judicial process and fraud upon the court.

Defendant D. Andrew Beal snubbed his nose at this court.  He evaded service.  I objected to the

corporation disclosure filed by Defendant MGC because I knew it was an attempt to commit

fraud upon this court.

Quoting from **Plaintiff's Objection to MGC's Corporate Disclosure:**

> Plaintiff objects to MGC's Corporate Disclosure because it contains omissions and misrepresentations of material fact. These omissions and misrepresentations of material fact have been made by MGC with intent to mislead the court about the true relationship between Defendants MGC, LNV and D. Andrew Beal.
>
> MGC claims in its "Statement of Relevant Facts" to be the "servicer" for LNV Corporation ("LNV"). In MGC's Corporate Disclosure submitted to the court MGC states, "MGC is a Texas Corporation wholly owned by Property Acceptance Corp., a Texas Corporation. Property Acceptance Corp. is not publically traded and is wholly owned by Beal Bank, a privately owned Texas state saving bank." Additionally in their "Statement of Relevant Facts" MGC states, "MGC is an affiliate of LNV.
>
> What MGC fails to disclose, which is material to Plaintiff's claim, is that Beal Bank, "a privately owned bank", is ultimately owned by D. Andrew Beal, an individual person and a defendant named in Plaintiff's Amended Complaint. The corporate address for Beal Bank is 6000 Legacy Drive, Plano Texas. Defendant D. Andrew Beal works at Beal Bank, at the 6000 Legacy Drive location. This is public knowledge and this fact is readily verifiable from many sources; including government regulatory agencies.
>
> Defendant D. Andrew Beal appears to be evading service of the summons for this complaint. D. Andrew Beal is the ultimate party responsible for MGC, as well as for LNV Corporation, which is not just and "affiliate" of MGC as they purport in their "Statement of Relevant Facts." MGC and LNV have the same senior executive officers and D. Andrew Beal is named as the top executive officer for both companies.
>
> Therefore, Defendant D. Andrew Beal does or should have knowledge of Plaintiff's complaint.

See Plaintiff's Exhibit A attached to Plaintiff's Objection to MGC's Motion to Dismiss

[Document 88].

Under Federal law, when any officer of the court has committed "fraud upon the Court", the

orders and judgment of that court are void or of no legal force or effect.

As officers of the court lawyers have an absolute ethical duty to tell judges the truth, including

avoiding dishonesty or evasion about reasons the attorney or his/her client is not appearing, the

location of documents and other matters related to conduct of the courts.

"Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner it impartial tasks of adjudging cases that are presented for adjudication. "*Kenner v C.I.R., 387 F.3d 689(1968); 7 Moore's Federal Practice, 2d ed., p. 512, 60:23*. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

"Fraud upon the court" makes void the orders and judgments of that court. It is also clear and well-settled that any attempt to commit "fraud upon the court" vitiates the entire proceeding. T*he People of the State of Illinois v. Fred E. Sterling, 357 Ill.354;192 N.E. 229 (1934)* ("The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions."); *In re Village of Willowbrook, 37 Ill. App.2d 393 (1962)* ("It is axiomatic that fraud vitiates everything.").

Since this court unconstitutionally dismissed my petition with prejudice I have been connecting with other victims of D. Andrew Beal and his sham shell corporations. Along with a handful of the numerous victims in our group I have been publically vocal about reporting the illegal activities of Beal and his business entities. We have been reporting to appropriate government agencies and to media. A highly respected investigative reporter, Brett Shipp, with ABC affiliate WFAA-TV in Dallas Texas has been investigating Beal's activities after attending a the hearing in the case of *LNV v. Breitlings, Cause No. DC-14-04053, District Court Dallas County, Texas, 134th Judicial District) resulting in Breitlings v. LNV Corporation, Case 3:14-cv-03322-M-BN, U.S. District Court for the Northern District of Texas Dallas Division*. As a result D. Andrew

Beal has been retaliating against us. See Plaintiff's Exhibit B letter from Beal's Attorney dated

November 14, 2014 threatening my freedom of speech rights under the First Amendment. (I

received the letter on November 17th and responded to it on November 18th. Copies of both

letters are included in the exhibit. Additionally Beal put me under surveillance on July 30, 2014

six hours after the Breitlings attached a letter I had written in behalf of our Beal victim group to

the Attorney Disiplinary Commission for the Illinois Supreme Court that included documentary

evidence that a DMI attorney named Charles King used caller ID spoofing as well as verbal

misrepresentation that he was a government employee while speaking with an employee at the

State Bank of Tennessee in relation to a FedWire account MGC instructed consumers to use for

paying off their mortgages or defaults. Cathy Gebhardt wired money into this account which

prompted the phone call. The account appears to be set up as a means to launder money

overseas. See *LNV Corporation v. Gebhardt, Case No. 3:12-CV-468-TAV-HBG, U.S. District

Court Eastern District of Tennessee at Knoxville.*


Beal proceeded to illegally accessed DMV recorders violating the privacy rights of a person

who's vehicle was parked on my property. He has sent several individuals to my home on

several occasions since July 30th and as a result I have been confined to my home in fear for my

life.


I fear that Defendant D. Andrew Beal and one or more of his sham shell companies will once

again threaten a fraudulent foreclosure on my property and will attempt to use the principle of res

iudicata based on this court's unconstitutional dismissal of my claims against his corporations

and him personally with prejudice in order to prevent me from defending myself and my rights

from his attack.

## PLAINTIFF'S PRAYER FOR RELIEF

Plaintiff prays this court vacate its VOID and unconstitutional Order based on fraud and fraud upon the court.

_____

Denise Subramaniam, Pro per